UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

C.M., et al.,

                              **Plaintiffs,**             **22-CV-09307 (JHR)(SN)**

            - against -                 **<u>MEMORANDUM OF LAW IN</u>**

                                              **<u>SUPPORT OF PLAINTIFFS'</u>**
                                              **<u>MOTION FOR SUMMARY</u>**
                                              **<u>JUDGMENT</u>**

NEW YORK CITY DEPARTMENT OF

EDUCATION,

                              **Defendant.**

-----------------------------------------X


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR
SUMMARY JUDGMENT**


                                           Respectfully submitted,
                                           PLAINTIFFS' ATTORNEY

                                           s/
                                           By: OROMA HOMA MPI-REYNOLDS
                                           Bar #OM9042

                                           MSR Legal & Consulting Services, PLLC
                                           503 Linden Street
                                           West Hempstead, New York 11552
                                           Oroma@MSRLegal.ORG
                                           Direct: (516) 725-5514
                                           Fax: (516) 604-0247

# Table of Contents

I.   *FACTUAL BACKGROUND & PROCEDURAL HISTORY*.................................................. 4

II.  *ARGUMENT*.................................................................................................................. *4*

    **A.** **Burlington/Carter**..................................................................................................**5**

    **B.** **Burden of proof**......................................................................................................**6**

    **C.** **Deference**..................................................................................................................**6**

  **1.** **The DOE Denied the Student a FAPE** ................................................................. **6**

    **A.** **Both the March 2021 IEP and the August 2021 IEP are within the scope of this case**........................................................................................................................................**7**

    **B.** **The Department's Conduct and Recommendations for P.M. were so Procedurally Flawed that they resulted in a Denial of FAPE to P.M.**....................................................**8**

    **C.** **The Department failed to issue a Due Process Response and failed to hold a Resolution Conference**................................................................................................................**15**

    **D**. **The Department Did Not Articulate Its Position With Respect to the Operative IEP during the Pre-Hearing Conference**……………………………………………..………**16**

    **E. The August 2021 IEP is Substantively Deficient in that it Failed to Address P.M.'s Needs in a Mainstream School**……………………………………………..…………………**16**

    **F.** **The Department Failed to Defend the Operative IEP (August 2021 IEP) at Hearing, and the SRO Erred in Finding that IEP to be Appropriate when the Hearing Record was Devoid of Any Evidence about the Operative IEP (August 2021 IEP)**……………**17**

  **2.** **Rebecca was Appropriate for The Student**…………………………………………**...20**

    **A.** **The Rebecca Program is Appropriate for Children with Autism**…………......…**21**

    **B.** **The Rebecca School Provided P.M. with Specially Designed Instruction and Related Services that Allowed P.M. to Make Meaningful Progress.** .............................**22**

  **3.** **The Equities Favor Plaintiffs**................................................................................**23**

    **A.** **Plaintiffs attended all the CPSE meetings and kept in touch with the CPSE team**........................................................................................................................................**23**

    **B.** **Plaintiffs visited all preschools suggested by CPSE based upon the March 2021 IEP; no schools were suggested for the August 2021 IEP** ………………**23**

    **C.** **The SRO erred in drawing an adverse inference against Plaintiffs because they paid a tuition deposit under a contract with an opt-out clause.**....................................**24**

IV.  *Conclusion*…………………………………………………………………………**25**

# Table of Authorities

| Judicial Decisions | Page(s) |
|---|---|
|  |  |
| *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 192 (2d Cir.2005) | 4-5 |
| *Honig v. Doe*, 484 U.S. 305, 311, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988) | 4 |
| *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 415 (2d Cir.2009) | 4 |
| *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 207, (1982) | 4, 18 |

| Citation | Page |
|---|---|
| *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 107 (2d Cir.2007) (citing *Walczak v. Fla. Union Free Sch. Dist.,* 142 F.3d 119, 122 (2d Cir.1998) | 4 |
| *U.S.C.A§1401(3)(A)(9), 34 C.F.R. A§300.17*. Also see *R.R. ex. Rel. M.R. v. Scarsdale Uniton Free Sch. Dist., 615 F. Supp. 2d 283, 287* (S.D.N.Y. 2009) | 5 |
| *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 247, (2009) | 5 |
| *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 246 (2d Cir.2012) | 5 |
| *C.F. v. NYC Dep't of Educ.*, 746 F.3d 68, 73 (2d Cir. 2014) (citing *Frank G. v. Bd. of Educ.*, 459 F.3d 356, 363 (2d Cir. 2006) | 5, 21 |
| *Forest Grove v. TA.*, 557 U.S. 230 (2009) | 5 |
| *Florence Cty. Sch. Dist. Four v. Carter*, 510 U.S. 7 (1993) | 5 |
| *Sch. Cte. of Burlington v. Dept of Educ.*, 471 U.S. 359 (1985) | 5-6, 17 |
| *Frank G. supra, cert. denied, 552.U.S. 985 (2007); 20 U.S.C. § 1412(a)(10)(C)* | 6 |
| *C.F. v. NYC Dept of Educ.*, 746 F.3d 68576 (2d Cir. 2014) | 6 |
| *MH v. NYC Dept of Educ.*, 685 F.3d 217, 224-25 (2d Cir. 2012) | 6 |
| *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 838 (2d Cir. 2014) | 6 |
| *A.D. v. City Sch. Dist. of NY*, 690 F. Supp. 2d 193, 207 (S.D.N.Y. 2010) | 6-7, 21 |
| *Reyes ex rel. R.P. v NYC Dep 't of Educ., 760 F.3d 211, 219* (2d Cir 2014) | 7 |
| *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d, 167, 190 (2d Cir. 2012) | 7 |
| *R.C. ex rel. M.C. v. Byram Hills School Dist.*, No. 11 Civ. 3938, 2012 WL 5862736, P. 11 (S.D.N.Y. Nov. 2012) | 8 |
| *R.E.*, 694 F.3d 167 | 9 |
| *Honig*, 484 U.S. 305 | 9 |
| *Regional School Unit 51 v. DOE*, 920 F. Supp. 2d 168 | 9 |
| *Constellation School. Elyria Cmty.*, 116 LRP 11802 (SEA Ohio 2015) | 9 |
| *Endrew F. v. Douglas Co. School District,* 137 S. Ct. at 999 (2017) | 10, 19 |
| *B.R. v. New York City Dep't of Eud.*, 841 G. Supp 2d 605, 611 (E.D.N.Y. 2012) | 10 |
| *Adam J. v. Keller ISD*, 328 F.3d 804, at 812 (5th Cir. 2003) | 9, 13 |
| *Marcus I. v. Department of Education, State of Hawaii*, 63 IDELR 245 (9th Cir. 2014) | 9, 13 |
| *Union School District*, 20 IDELR 987 (9th Cir. 1994) | 10 |
| *B.H. v. West Clermont Bd. of Educ.*, 788 F. Supp. 2d 682, 272 Ed. Law Rep. 445 (S.D. Ohio 2011) | 11 |
| *V.A. v. City of New York*, 20-CV-0989 (EK)(RML), at * 14-15 (E.D.N.Y. May 10, 2022) | 13 |
| *FB v. N.Y.C. Dept. of Educ,* 132 F. Supp. 3d 522, 541-43 (S.D.N.Y. 2015) | 13 |
| *C.U .v. N.Y.C . Dep't of Educ.*, 23 F. Supp. 3d 210, 227 (S.D.N.Y. 2014) | 13 |
| *R.Y. v. New York City Dept of Educ.,* 68 IDELR 230 (S.D.N.Y. 2016) | 13 |
| *El Paso County Sch. Dist.*, 113 LRP 44602 (SEA CO 2013) | 13 |
| *Mrs. C. v. Wheaton*, 916 F.2d 69, at 72, 75 (2d Cir. 1990) | 13 |
| *Weast v. Schaffer*, 240 F. Supp. 2d 396 (D. Md. 2002) | 18 |
| *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 121, 122 (2d Cir. 1998) | 18 |
| *M.S. v. Board of Education*, 231 F.3d 96 (2d Cir. 2000) | 18, 20 |
| *Oberti v. Board of Educ.*, 801 F. Supp. 1392 (D.N.J. 1992) | 18 |

| | |
|---|---|
| *T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist.,* 554 F. 3d 247, 254 (2nd Cir. 2009) | 19 |
| *Schreiber v. E. Ramapo Cent. Sch. Dist.,* 700 F.Supp. 529 (S.D.N.Y. 2010) | 20 |
| *Warren G. v. Cumberland County Sch. Dist.,* 190 F.3d 80, 84 (3d Cir. 1999) | 20 |
| *Mr. and Mrs. A. v. NYC Dep 't of Educ.,* 769 F. Supp. 2d 403, 418-419 (S.D.N.Y. 2011) | 21 |
| *T.K.v. N.Y.C. Dep't of Educ.,* 810 F. 3d 869, 879 (2d Cir. 2016) | 24 |
| **Statue and Regulations** | **Page(s)** |
| 20 U.S.C. § 1412(a)(1)(A) | 4 |
| 20 U.S.C. § 1400(d)(1)(A) | 4 |
| 20 U.S.C. § 1414(d)(1)(A) | 4 |
| *20 U.S.C §§ 1400-1482* | 4 |
| *34 C.F.R. A§300.17* | 5 |
| *Section 200.16 (a) of the Regulations of the Commissioner of Education* | 5 |
| 20 U.S.C. § 1412(a)(10)(C) | 5 |
| *N.Y. Educ. L. § 4404(1)* | 5 |
| *20 U.S.C. § 1412(a)(10)(C)* | 5 |
| *N.Y. Educ. Law § 4404(l)(c)* | 6 |
| *34 C.F.R. §300.513(a)* | 7 |
| *8 NYCRR 200.5(i)(1)(iv)* | 7 |
| *8 NYCRR 200.5(j)(1)(ii)* | 8 |
| *20 USC 1415(b)(3)* | 8 |
| *34 C.F.R. § 300.503(c)(1)* | 11 |
| *34 C.F.R. §300.504* | 11 |
| 8 NYCRR 200.5(i)(4)(i); see 34 C.F.R. 300.503(e) | 14 |
| 8 NYCRR 200.5(i)(3) | 15 |
| 8 NYCRR 200.5(j)(3)(xi)(a) | 15 |
| 8 N.Y.C.R.R. § 200.13(a)(6) | 17 |
| *New York Education Law §4401* | 18-19 |
| 8 NYCRR 200.13(d) | 24 |
| Section 2541 of the Public Health Law | 24-25 |
| Section 4410 of the Education Law | 24 |
| | |
| | |

# I.    FACTUAL BACKGROUND & PROCEDURAL HISTORY

For a full recitation of the detailed factual and procedural history in the instant matter, Plaintiffs respectfully refer Your Honor to their Complaint, Docket # 4, Filed 11/01/22, pages 4 to 15, specifically paragraphs 12 through 65 of Plaintiffs' Complaint.

# II. ARGUMENT

The IDEA requires a state that receives federal education funding to provide all children with disabilities with a "free appropriate public education." *20 U.S.C. § 1412(a)(1)(A)*; see also *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 192 (2d Cir.2005). A FAPE should "emphasize special education and related services designed to meet [a disabled child's] unique needs and prepare [the child] for further education, employment, and independent living." *20 U.S.C. § 1400(d)(1)(A)*. To accomplish that purpose, the school district must develop an IEP for each disabled child that "sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *Honig v. Doe*, 484 U.S. 305, 311, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988); see also 20 *U.S.C. § 1414(d)(1)(A)*; *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 415 (2d Cir.2009). The IEP must be "reasonably calculated to enable the child to receive educational benefits." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 207, (1982); see also *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 107 (2d Cir.2007) (citing *Walczak v. Fla. Union Free Sch. Dist.,* 142 F.3d 119, 122 (2d Cir.1998)).

Under Section 504, all school-age children who are individuals with disabilities as defined are entitled to FAPE. And, the Individuals with Disabilities Education Act ("IDEA"), *20 U.S.C §§ 1400-1482*, extends the right to a FAPE to all students between the age of 3 and 21. *20*

*U.S.C.A§1401(3)(A)(9), 34 C.F.R. A§300.17.* Also see *R.R. ex. Rel. M.R. v. Scarsdale Uniton Free Sch. Dist., 615 F. Supp. 2d 283, 287* (S.D.N.Y. 2009). Part B of *IDEA* requires participating states to ensure that a free appropriate public education (FAPE) is made available to eligible children with disabilities in mandatory age ranges residing in the state. Furthermore, in New York State, according to *Section 200.16 (a) of the Regulations of the Commissioner of Education*, a preschool student with a disability shall be eligible for special education services and programs.

When a parent believes that the state has failed to offer his or her child a FAPE, the parent may unilaterally place the child in a private school and seek reimbursement from the school district. *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 247, (2009); see also *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 246 (2d Cir.2012); *Cerra*, 427 F.3d at 192. The parent must then file a due process complaint that challenges the appropriateness of the IEP and attend a hearing before an IHO. *N.Y. Educ. L. § 4404(1)*.

### A. Burlington/Carter

The IDEA specifically contemplates that "when a public school fails to provide a FAPE and a child's parents place the child in an appropriate private school without the school district's consent, a court may require the district to reimburse the parents for the cost of the private education" *C.F. v. NYC Dep't of Educ.*, 746 F.3d 68, 73 (2d Cir. 2014) (citing *Frank G. v. Bd. of Educ.*, 459 F.3d 356, 363 (2d Cir. 2006)); see *20 U.S.C. § 1412(a)(10)(C))*. Under the Burlington-Carter test for tuition reimbursement, parents are entitled to reimbursement of private school tuition if (1) the IEP was not reasonably calculated to enable the child to receive educational benefits, (2) the private schooling obtained by the parents is appropriate to the child's needs, and (3) equitable considerations do not preclude all or a portion of the parental claim.

*Forest Grove v. TA.*, 557 U.S. 230 (2009); *Florence Cty. Sch. Dist. Four v. Carter*, 510 U.S. 7

(1993); *Sch. Cte. of Burlington v. Dept of Educ.,* 471 U.S. 359 (1985); *Frank G.* supra, cert.

denied, 552U.S. 985 (2007); 20 U.S.C. § 1412(a)(10)(C).

### B.  Burden of proof

In New York State, the burdens of production and persuasion at hearing fall upon the

school district for all matters except for the appropriateness of the child's placement at the

parent's selected private school. *C.F. v. NYC Dept of Educ.*, 746 F.3d 68576 (2d Cir. 2014); *MH*

*v. NYC Dept of Educ.*, 685 F.3d 217, 224-25 (2d Cir. 2012); *N.Y. Educ. Law § 4404(l)(c).*

### C.  Deference

While courts ordinarily view the SRO's conclusions and findings with deference when

connected to issues of educational expertise, the administrative decision must be supported by

the record and the parent's due process rights must be protected.  Deference does not mean blind

adherence to an administrative officer's perspective.   If the SRO or IHO failed to properly

analyze the record or if the SRO's or IHO's determinations are insufficiently reasoned , the court

may substitute its own judgment for that of the SRO or IHO. *MH* 685 F.3d at 244; see also *C.L.*

*v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 838 (2d Cir. 2014), *A.D. v. City Sch. Dist. of*

*NY*, 690 F. Supp. 2d 193, 207 (S.D.N.Y. 2010).

## 1.  The Department Denied the Student a FAPE

With respect to the FAPE analysis, the issues identified by the District Court under

consideration in this appeal fall generally within two broader categories and will be addressed

herein as: (1) whether the Parents were denied meaningful participation in the development of

the IEP; and (2) whether the IEP was substantively appropriate. See, *Reyes ex rel. R.P. v NYC*

*Dep 't of Educ., 760 F.3d 211, 219* (2d Cir 2014) (single substantive violation warrants a finding of denial of FAPE).

Substantive violations typically amount to denials of FAPE, thereby entitling parents and students to prospective or compensatory relief. Although a procedural violation does not necessarily mean the child failed to receive FAPE, it has been noted that "[m]ultiple procedural violations may cumulatively result in the denial of a FAPE even if the violations considered individually do not." *R.E. v. N.Y.C. Dept. of Educ.*, 694 F.3d, 167, 190 (2d. Cir. 2012), *see also A.D., 2013 U.S. Dist.* LEXIS 38757, at *17; *E.F.*, 2013 U.S. Dist. LEXIS 117143 at * 36. More specifically, a procedural violation will amount to a denial of FAPE if it: (1) impedes the child's right to a free appropriate public education; (2) significantly impedes the parents' opportunity to participate in the decision-making process regarding the provision of a free appropriate public education to the parent's child; or (3) caused a deprivation of educational benefit." *34 C.F.R. §300.513(a)*.

**A.       Both the March 2021 IEP and the August 2021 IEP are within the scope of this case.**

According to *8 NYCRR 200.5(i)(1)(iv),* all that is required in an impartial hearing request is "a description of the nature of the problem of the student relating to such proposed or refused initiation or change, including acts relating to such problem."

On September 13, 2021, Plaintiffs filed a due process complaint against the New York City Department of Education ("the Department") making allegations regarding both the March 2021 IEP and August 2021 IEP.  Plaintiffs alleged disagreement with the IEP recommendations sent by Ms. Tejada on April 14, 2021 and alleged that the Department had not arranged for P.M.'s special education program and services within 60 school days of the date Plaintiffs signed consent to the individual evaluation (Ex. B-2).   Plaintiffs further alleged that, as of September

13, 2021, the Department had neither finalized P.M.'s IEP (Ex. B-2), even though the Department's projected implementation date of the August 30, 2021 IEP was September 13, 2021 (Ex, R-2; R-10), nor recommended any preschool placement other than ADAPT (Ex. B-3), which was a recommendation based on the prior March 2021 IEP.

### B. The Department's Conduct and Recommendations for P.M. were so Procedurally Flawed that they resulted in a Denial of FAPE to P.M.

#### a. *The August 2021 IEP team failed to provide the Parents with a timely Prior Written Notice.*

The law provides a set of procedural safeguards to secure the ability of children with a disability and their parents to give effect to other rights conferred on them by the IDEA. *20 U.S.C. § 1415 and at 34 C.F.R. § 300.500 to 300.536*. One of the central procedural safeguards is the parent's right to receive written notice before certain local agency decisions take effect. According to *20 U.S.C. § 1415 (b)(3)*, the local agency (including the Department of Education) is required to provide "[w]ritten prior notice to the parents of the child… whenever the local education agency – (A) proposes to initiate or change; or (B) refuses to initiate or change, the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to the child".

One of the primary purposes of prior written notice is to enable parents to exercise in an informed manner and in a timely way the rights the IDEA secures for them and their children. It protects the parents an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate. The Supreme Court emphasized, in *Honig v. Doe*, that the PWN guarantees the parents the right to examine all relevant records about their child's identification, evaluation, and educational placement. *Honig*, 484 US 305. The Supreme Court further held that a PWN was required whenever the responsible

educational agency proposes (or refuses) to change the child's placement or program; an opportunity to present complaints concerning any aspect of the local agency's provision of a free appropriate public education; and an opportunity for "an impartial due process hearing" concerning any such complaints. *Id.*

Any failure of a public agency to convey the required PWN would thwart the statutory objective. In *Regional School Unit 51 v. DOE*, the Second District upheld the finding of an administrative hearing officer that the school district had violated its obligation under *20 U.S.C. 1415(b)(3)* by failing to provide the parents prior written notice of a change of the student's IDEA-eligible status. *Regional School Unit 51,* 920 F. Supp. 2d 168.

In the instant case, the Department should have provided Plaintiffs with a PWN because it changed P.M.'s placement from a 12:1:2 special class on the March 2021 IEP to a main-stream class with a SEIT service in a group of two, 10 hours per week. (Ex. R). Changes in placement always require Prior Written Notice according to *Constellation School. Elyria Cmty.*, 116 LRP 11802 (SEA Ohio 2015). In *Constellation*, a charter school violated the IDEA when it failed to issue a PWN informing the parent that it was declining a request to change the student's placement to a self-contained class.

By failing to recommend a preschool program or placement for P.M. by September 13, 2021 based on the more recent August 30, 2021 IEP, the Department effectively denied Plaintiffs the opportunity to participate in the school selection and decisionmaking process. Consequently, Plaintiffs could not make any additional, specific allegations regarding the August 30, 2021 IEP in their due process complaint because (1) the Department had not explained its proposed change in recommendations from the March 2021 IEP to the August 2021 IEP, and therefore Plaintiffs were left in the dark about the reasons underlying the drastic changes from one IEP to the next,

and (2) the Department had taken no efforts to recommend an early childhood center where the August 2021 IEP could take place.   Plaintiffs were entitled to a "cogent and responsive explanation" for the Department's proposed change in recommendations according to *Endrew F. v. Douglas Co. School District,* 137 S. Ct. at 999 (2017).  Plaintiffs had no idea whether the August 2021 IEP could, in fact, be implemented in a general education "3-K" program or regular nursery school.   (See *B.R. v. New York City Dep't of Eud.*, 841 G. Supp 2d 605, 611 (S.D.N.Y. 2012), finding that school districts must be able to implement IEPs).  At the time, P.M. was a non-verbal three-year old without functional communication skills (Tr. 49:3-9; 170:16). Therefore, P.M. did not present as typically developing three-year-old who could attend a regular or general education program.

The SRO erroneously concluded that any lack of a timely prior written notice does not cause a deprivation of educational benefit. (SRO Decision at 27).

An oral notification does not meet the statutory requirement under the IDEA. The notice must be made in writing. The Department of Education tried to argue that the PWN was not required because the parents attended the IEP and were orally notified of the changes. However, according *to 34 C.F.R. § 300.503(c)(1)*, the PWN shall be written in language understandable to the general public and provided in the native language of the parents or other modes of communication used by the parents unless it is not feasible to do so.

In *Union School District v. Smith*, the court held that an oral notice does not meet the Prior Written Notice requirement regardless of whether the verbal notice is substantively appropriate. *Union School District*, 20 IDELR 987 (9th Cir. 1994). *Letter to Lieberman, 52 IDELR 18 (OSEP 2009)*, indicates that a "change to the student's identification, evaluation, placement, or services does not relieve an LEA of its obligation to provide prior written notice of

that change.  In *B.H. v. West Clermont Bd. of Educ.,*  the court held the school district violated the IDEA because the district predetermined services and failed to provide parents with necessary prior written notice, even though the parents signed IEP. *B.H*, 788 F. Supp. 2d 682, 272 Ed. Law Rep. 445 (S.D. Ohio 2011). Therefore, it is reasonable to conclude that a verbal notice does not meet the statutory requirement.

The Department's argument that Plaintiffs were fully aware of their due process rights because their attorney was present in the March 2021 IEP meeting and that the Department emailed Plaintiffs' a procedural safeguard notice. (Tr. 60) This argument is ungrounded and unreasonable. First of all, although Plaintiffs' attorney was present at the March 2021 meeting, Plaintiffs' attorneye was <u>not</u> present at the August 2021 meeting that created the operative IEP in this matter.  Nonetheless, providing a PWN is an affirmative duty instead of an option. No law or cases support that this duty will be exempted or eliminated when the parents or parents' representative possesses professional legal knowledge. Additionally, the parents' lawyer has no responsibility or authority to make a written notice on behalf of the Department of Education. Furthermore, the purpose of PWN is not only to inform the parents of their right to seek resolution but also to provide them with detailed information about the placement proposed and an opportunity to voice any concerns or suggestions. In *Letter to Boswell,* 49 IDELR 196 (OSEP 2007), the U.S. Department of Education (USED) Office of Special Education Programs (OSEP) opined that the purpose of providing PWN is "to ensure that a parent understands the special education and related services which an LEA has proposed or refused to provide to a student. If a parent does not understand the proposed services, they could not have agreed to them". Without such information, Plaintiffs were deprived of their right to have a voice in their child's educational placement.  They were unaware of why the Department changed P.M.'s IEP

recommendations so drastically, when P.M.'s actual needs had not changed from March 2021 to August 2021.  Furthermore, the Department never recommended an early childhood center that Plaintiffs could visit to determine whether the IEP could even be implemented.  On August 31, 2021, P.M. aged out of his Early Intervention Program and his services then ceased.

Recent federal case law indicates that the failure to issue Prior Written Notice or a Final Notice of Recommendation before the start of the school year is a denial of a FAPE in and of itself. *V.A. v. City of New York*, 20-CV-0989 (EK)(RML), at * 14-15 (E.D.N.Y. May 10, 2022) ("Still, the school designation cannot come so late that it impeded the parent's ability to participate meaningfully in the school selection process. *S.Y.,* 210 F. Supp. 3d 556, 574-75 (S.D.N.Y. 2016). For instance, a procedural violation occurred where the equivalent of a school location letter was sent "on June 15 for a school year beginning on July 6," id, at 574 (citing *FB v. N.Y.C. Dept. of Educ,* 132 F. Supp. 3d 522, 541-43 (S.D.N.Y. 2015); "on June 18 for a school year beginning on July 5," id, (citing *C.U .v. N.Y.C . Dep't of Educ*., 23 F. Supp. 3d 210, 227 (S.D.N.Y. 2014)); and on June 18 for a school year beginning on July 2, id, at 574."). In the instant case, the Student's 2021-2022 school year began on or before September 13, 20201 (Ex. R-2); however, the Prior Written Notice/Final Notice of Recommendation arrived long afterward, on October 20, 2021 (Tr. 261: 17-25; 262:1).

The lack of a timely PWN for P.M. was a procedural violation of the IDEA that impeded P.M.'s right to a FAPE and deprived Plaintiffs of their opportunity to participate meaningfully in the Commitee on Preschool Education's ("CPSE") decisionmaking process.

In the *R.Y* case, the Southern District found procedural violations when the Department of Education failed to provide a PWN before deciding not to offer a one-to-one paraprofessional. This led to a denial of FAPE and reimbursement for private placement. *R.Y. v. New York City*

*Dept. of Educ.,* 68 IDELR 230 (S.D.N.Y. 2016). See also *El Paso County Sch. Dist.,* 113 LRP 44602 (SEA CO 2013). See also *Mrs. C. v. Wheaton*, 916 F.2d 69, at 72, 75 (2d Cir. 1990) (finding that a student was entitled to compensatory education where a school district failed to provide parental notice before terminating the student's educational placement).

Insufficient content of a PWN can also result in a violation of a FAPE. In *S.Y. v. New York City Department of Education,* 210 F. Supp. 3d 556, at 341 Ed. Law Rep. 739 (S.D. N.Y. 2016), the court held the DOE's failure to provide parents of a disabled student with written notice of proposed changes to the student's individualized education plan (IEP) and its refusal to adopt the parents' proposed placement of student deprived student of FAPE under IDEA. Even if the IEP itself could have served as prior written notice, the court explained, the student's IEP failed to conform to the IDEA's notice requirements and did not mention the removal of the one-to-one paraprofessional or the 8:1:3 ratio from the IEP, or include an explanation of school district's decisions and the relevant factors, as required by the IDEA.

In the instant case, because the Department of Education failed to provide a timely PWN, there was not enough time for the parents to analyze whether a regular nursery school or daycare center could accommodate their non-verbal son with only SEIT. And without a notice written in plain English, the parents were underinformed of why their non-verbal son's placement was changed from a 12:1:2 special class to a mainstream education classroom setting. They were deprived of the right to meaningful discussion and consensus with the school. Therefore, their input and participation at the table were severely restricted by the Department. For purposes of harm to the parents, the courts often look into whether the parent was denied meaningful input and participation as part of developing the student's educational program. *Adam J. v. Keller ISD*, 328 F.3d 804, at 812 (5th Cir. 2003); see *Marcus I. v. Department of Education, State of Hawaii*,

63 IDELR 245 (9th Cir. 2014). Therefore, the SRO erred in concluding that the lack of a PWN before a change of IEP did not violate Plaintiffs' due process rights.

### C. The Department failed to issue a Due Process Response and failed to hold a Resolution Conference.

State and federal regulations provide that, if the school district has not sent a prior written notice to the parent regarding the subject matter of the parent's due process complaint notice, the district shall provide a response to the parent within 10 days of receiving the complaint (*Application of a Student with a Disability*, SRO Appeal 22-144, citing 8 NYCRR 200.5(i)(4)(i); see 34 C.F.R. 300.503(e)).   In the instant case, the Department does not deny that it failed to submit timely prior written notice.   At the hearing, the Department did not defend its August 2021 IEP nor its *October* 2021 PWN (Tr. 38:12-13; Tr. 113:2-4).   Therefore, the Department should have issued a due process response in response to Plaintiffs' due process complaint.   The Department, however, never issued a Due Process Response in this matter.   At hearing, Plaintiffs were blindsided by the Department's decision to defend the March 2021 IEP instead of the August 2021 IEP.   Plaintiffs did not find out that the Department's position on the operative IEP for P.M. until the beginning moments of the impartial hearing (Tr. 35:12-14).

According to *34 C.F.R. §300.510*, within 15 days of receiving notice of the Parent's due process complaint, the Department must convene a meeting with the Parent and the relevant member or members of the IEP Team. The purpose of the meeting is to discuss the due process complaint and the fact so that the Department has the opportunity to resolve the dispute. The school district must continue to make diligent efforts throughout the remainder of the 30-day resolution period to ensure the parent's participation in a resolution meeting.  *8 NYCRR Section 200.5(i), 200.5(j), 200.16 )g) and 201.11*.   If the Department cannot resolve the due process

complaint to the satisfaction of the Parent within 30 days of the receipt of the due process complaint, the due process hearing may occur.

In the instant case, rather than hold a resolution meeting for P.M.'s due process complaint, the Department sent a written notification to the Plaintiffs' attorney that it sought to resolve the due process complaint via stipulation of settlement, and requested tuition-related documents from Plaintiffs.   (See generally, Tr. 7:3-8; 12:20-21; 15:23-24).   Plaintiffs never received an initial offer of settlement from the Department nor any response to their submission of requested documents.   *Id.*   The Department never challenged the sufficiency of Plaintiffs' due process complaint under 8 NYCRR 200.5(i)(3).

**D.  The Department Did Not Articulate Its Position With Respect to the Operative IEP during the Pre-Hearing Conference.**

One of the purposes of the prehearing conference is to simply and clarify the issues to be resolved at the impartial hearing, and to inquire about the district's position, if any, about the parent's impartial hearing request (see *Application of a Student with a Disability*, SRO Appeal No. 22-144, citing 8 NYCRR 200.5(j)(3)(xi)(a)).   In the instant case,  Impartial Hearing Officer Vandana Chak, Esq. held a pre-hearing conference in the instant matter.   Although the Department appeared, the Department declined to disclose its position with respect to Plaintiffs' claims (Tr. 7:3-8; 12:20-21; 15:23-24).  The Department, (1) having failed to issue a Due Process Response, (2) having failed to challenge the sufficiency of Plaintiffs' due process complaint, leading Plaintiffs to believe the Department did not require further explanation regarding Plaintiffs' claims; (3) having failed to hold a resolution conference with Plaintiffs to discuss the Department's position, and instead, notifying Plaintiffs that it intended to settle the due process complaint; and (4) having declined disclosure of the Department's position on Plaintiffs' claims at the pre-hearing conference, all significantly impeded Plaintiffs' right to full and fair impartial

due process hearing to such an extent that the Impartial Hearing Officer's decision and SRO's decision should be overturned.

E. **The August 2021 IEP is Substantively Deficient in that the August 2021 IEP Failed to Address the Student's Needs in a Mainstream School.**

P.M. had significant needs in social skills and language skills during the 2020-2021 school year. He was defined as a "non-verbal" child in the August 2021 IEP. (Ex. V-3). P.M. could not yet use appropriate eye contact while playing with others, and eye contact was noted as fleeting and minimal. *Id*. P.M. was reported to hum when playing using an open-vowel sound. *Id*. P.M. did not yet participate in a play routine with another person for at least 1 minute while using appropriate eye contact, naming objects in photographs, or name various pictured objects. *Id*. He did not yet demonstrate joint attention. *Id*. He did not yet use gestures and vocalizations to request objects. *Id*.

Despite these noted deficits, the service recommended by the Department on the August 2021 IEP was insufficient to address P.M.'s needs. It only recommended direct Special Education Itinerant Teacher ("SEIT") Services in a group of two students, 10 hours per week for 60 minutes in an Early Childhood Program/Center. It failed to explain how a non-verbal child with very limited eye contact would progress in a mainstream school with only two hours of service per school day. Although the Department recommended an iPad for P.M. (Ex. R-12), it did not recommend assistive technology training of general education or nursery school staff in use of said device. Given the lack of sufficient support services on the August 2021 IEP, P.M. would be left with a program that was more likely to elicit regression versus meaningful progress.

Several of the IEP goals on the August 2021 IEP were unmeasurable and incomplete. While the IEP does identify P.M.'s delayed social and speech development, the resulting goals were too broad and vague. For example, one of P.M.'s goals is "within one academic year; the

Student will communicate and interact in a positive manner with peers (e.g., nonaggressive verbalizations or body language, appropriate eye contact, appropriate turn-taking, listening without speaking)". (Ex. V-8). However, there was no explanation of how "positive manner" would be measured. The August 2021 IEP failed to provide instructions for how the general education teacher in the early childhood center should carry out this goal, nor the benchmarks for success or mastery of this goal.

The Department *could have* recommended transitional support services, but it did not. State law requires the provision of transitional support services for children with autism, "In those instances where a student has been placed in programs containing students with other disabilities, or **in a regular class placement**, a special education teacher with a background in teaching students with autism *shall* provide transitional support services in order to assure that the student's special education needs are being met". 8 N.Y.C.R.R. § 200.13(a)(6) (emphasis added). The Department did not develop an IEP that was reasonably calculated to confer a meaningful educational benefit onto P.M.

**F.** **The Department Failed to Defend the Operative IEP (August 2021 IEP) at Hearing, and the SRO Erred in Finding that IEP to be Appropriate when the Hearing Record was Devoid of Any Evidence about the Operative IEP (August 2021 IEP).**

Under the *Burlington/Carter* Test, the district has the burden of proving that it offered the student a FAPE. If it fails, the burden shifts to the parents to prove that their program is appropriate and that the equities favor an award of tuition reimbursement/funding. "The Congressional statement and declaration clearly indicate that if parents with special needs children have the burden of persuasion at the administrative level, their failure to put on a prima facie case would mean that the school district could rest without having to produce any evidence in justification of the IEP." *Weast v. Schaffer*, 240 F. Supp. 2d 396 (D. Md. 2002).

New York has a long-term history of following this rule. In *Walczak v. Florida Union Free School District*, the Second Circuit held that the burden of proof at a due process hearing is borne by the school. *Walczak*, 142 F.3d 121, 122 (2d Cir. 1998) (citing New York SEA decisions). And in *M.S. v. Board of Education*, 231 F.3d 96 (2d Cir. 2000), the Second Circuit extended the *Walczak* Rule. The *M.S.* court held that the school shouldered the burden of proving substantive and procedural compliance with the IDEA (Prong I) at both the administrative and judicial stages. *Id.* at 102-04. The *Oberti* Rule applies to the Burlington/Carter Test. *New York Education Law §4401* also clearly places the initial burden of proof and persuasion on the school district. *Oberti v. Board of Educ.,* 801 F. Supp. 1392 (D.N.J. 1992).

   a. ***Even if the parents lose at the administrative review level and the case is appealed to the U.S. District Court, the due weight is still on the school district***.

In the *Rowley* case, the Supreme Court held that "Given that the district court must independently review the evidence adduced at the administrative proceedings and can receive new evidence, we see no reason to shift the ultimate burden of proof to the party who happened to have lost before the state agency, especially since the loss at the administrative level may have been due to incomplete or insufficient evidence or to an incorrect application of the Act." *Rowley*, 995 F. 2d at 1219. In 1993, the Third Circuit Court, in *Oberti v. Bd. of Educ,* clearly held that the school district has the burden of proof at the due process administrative hearing level and the U. S. District Court level, even if the school district prevailed at the administrative hearing. *Oberti*, 995 F.2d 1204 (3d Cir. 1993). Also, after the *Walczak* case, the Second Circuit followed the *Oberti* Rule. It held that in a due process hearing, school authorities have the burden of supporting the proposed IEP. *Walczak*, 142 F.3d 119, at 122 (2d Cir, 1998).

The Department, under the Individuals with Disabilities Education Act ("IDEA"), must prove that a child's IEP must be likely to produce progress, not regression, and must afford the

student an opportunity greater than mere trivial advancement. *T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist.,* 554 F. 3d 247, 254 (2nd Cir. 2009). In *Endrew F. v. Douglas Co. School District,* 137 S. Ct. at 999 (2017), the United States Supreme Court interpreted the scope of the FAPE requirements under the IDEA and heightened the responsibility of school districts from merely providing de minimis educational benefit or trivial progress. To meet its substantive obligation under the IDEA, a school district must affirmatively prove that it offered an appropriately supportive program and placement reasonably calculated to enable the child to make progress in light of the child's individual circumstances. *Id.* School authorities must provide a "cogent and responsive explanation" for their decisions "that shows that IEP is reasonably calculated to enable the child to make progress appropriate in light of these circumstances." *Id.* at 1002.

In the instant matter, both the IHO and SRO erred in articulating the Department's burden under the Burlington analysis as to "whether the proposed IEP was inadequate." (IHO Decision at 9). The articulation of standard in this manner erroneously shifted the burden of proof and persuasion onto Plaintiffs to demonstrate that the IEP was inadequate, whereas *New York Education Law §4401* squarely places the initial burden of proof and persuasion in the impartial hearings on school districts.

With respect to the March 2021 IEP, the Department did not call a qualified individual to testify in support of its recommendations for P.M., and did not call any witness in support of the August 2021 IEP. The CPSE administrator from the March 2021 IEP is someone who holds a Master's degree in "the teaching of English speakers of other languages" (Tr. 40: 9-10) and a Master's degree in educational leadership (Tr. 40: 11-12). This CPSE administrator was not qualified to interpret the instructional implications of the evaluations before her at the Initial

Eligibility Determination meeting on March 31, 2021. When questioned on cross-examination about who interpreted the evaluations at the CPSE meeting, the CPSE Administrator admitted that it was someone else, unnamed (Tr. 72: 7-10). The Department did not call any witness who purportedly interpreted the instructional implications of the evaluations presented at the Initial Eligibility Determination meeting. Therefore, the Department failed to meet its burden of providing a responsive and cogent explanation for its is recommendations on both the March 2021 and August 2021 IEPs.

### b. *The SRO's decision should NOT be given deference by the federal court.*

The Department failed to provide any witness or evidence proving that the August 2021 IEP meets the Student's needs. (SRO Decision, 14, "it is unclear why the district avoided defending the August 2021 IEP at the impartial hearing"). The Department did not present any witnesses from the August 19, 2021 (Ex. R-15) or August 30, 2021 (Ex. R-16) CPSE reconvene meetings (Tr. 258:3-5). Even when defending the March 2021 IEP, the Department's sole witness offered only a generic opinion unsupported by objective evidence. The Department failed to present witness testimony or evidence from any preschool placement concerning P.M.'s special educational needs (Tr. 23-24).

The SRO unreasonably minimized the Department's Burden of Proof and failed to consider all the relevant evidence in the hearing record before drawing conclusions.

## 2.  Rebecca was Appropriate for The Student

Parental placements are subject to fewer constraints than those applied to school districts. *Schreiber v. E. Ramapo Cent. Sch. Dist.*, 700 F.Supp. 529 (S.D.N.Y. 2010). For example, parents are not subject to the exact mainstreaming requirements as school districts. *M.S. v. Bd. of Ed. Of City Sch. Dist. Of Yonkers*, 231 F.3d 96, 105 (2d Cir. 2000) (citing *Warren G. v. Cumberland*

*County Sch. Dist.*, 190 F.3d 80, 84 (3d Cir. 1999)). In order to prevail on the Second Prong of the *Burlington/Carter[1]* analysis, the parent only needs to show that the placement provides educational instruction specially designed to meet the unique needs of a student with a disability, supported by such services as are necessary to permit the student to benefit from the instruction. *Frank G. v. Bd. of Educ.*, 459 F.3d 356, 364 (2d Cir. 2006). In the instant case, both the SRO and the IHO failed to render determinations regarding the appropriateness of the Rebecca School or the equities.

### A.     The Rebecca Program is Appropriate for Children with Autism

The Rebecca School ("Rebecca") offers a full-time therapeutic special education program that serves students with neuro-developmental disorders, primarily Autism, who have difficulty relating to and communicating with the individuals around them. (Tr. 116: 21-25).  Rebecca has been held by courts in this District to be an appropriate placement for students with Autism. See, e.g., *A.D.,* supra, 690 F.Supp. 2d at 210-212; *Mr. and Mrs. A. v. NYC Dep 't of Educ.,* 769 F. Supp. 2d 403, 418-419 (S.D.N.Y. 2011). Rebecca is in a full-time therapeutic special education program. The curriculum is adapted to fit each child's needs and learning style (Ex. M at 1).

Rebecca uses DIR methodology. *Id*, see also Tr. 117: 1-3. The DIR model is supported by research and is especially effective with children with Autism and neuro-developmental disorders that interfere with the development of communication, relatedness, social skills, and appropriate learning skills. (Tr. 119:9-17). The DIR considers "what they're learning; they're able to understand and hold onto and then generalize across all areas." (Tr. 120: 18-22). "Those are the components of how we look at each child and then understanding their D (developmental capacities), their I (individual differences), and their R (relationship), we then create an individualized plan to meet that child's individual needs." *Id.*

The age range of the student population at the Rebecca school is 3 through 21. (Tr. 121: 12). They have 18 classrooms, two sensory gyms, a regulation middle school gym, a nurse's office, three music therapy rooms, and an art room. (Tr. 123). Students are grouped into classes based upon similarity of age, abilities, needs, behaviors, social and academic strengths and weaknesses, and verbal skills. Students are functionally grouped to encourage the formation of social and emotional bonds within each class. The therapists at Rebecca all have a master's degree and are certified and licensed in their field. (Tr. 125: 16-20). Additionally, the Rebecca School utilizes an academic curriculum aligned with the Common Core standards. (Tr. 126: 4-9).

## B. The Rebecca School Provided P.M. with Specially Designed Instruction and Related Services that Allowed P.M. to Make Meaningful Progress.

Rebecca was individualized to address each of P.M.'s special education needs and to address all of his learning difficulties. (Tr. 129). Rebecca provided P.M. with a program to address his sensory integration and processing difficulties and deficits first, thus providing him an opportunity to learn to self-regulate and become available for higher learning.

The Rebecca School offered P.M. a 9:1:4 ratio. (Ex. Q; Tr. 130:1-7). Through the provision of oral motor treatment and intervention, P.M. started to slow down his pace of eating. (Tr. 150: 1-3). Due to the provision of sensory input into his oral motor mechanism, P.M. no longer felt the urge to overstuff his mouth with food. *Id*. Additionally, P.M. became more verbal. "Now that he is speaking, he has been reading to us at home, and he is reading to teachers at school." (Tr. 270: 5-8). He can sing now (Tr. 259: 22) and is more affectionate with others. (Tr. 260: 4-6). He also improved in his ability to regulate his emotions and frustration and transition between activities. (Tr. 319: 12-25).

P.M. also received a robust sensory integration protocol, such as deep pressure, tactile input, brushing protocol, swinging, jumping on a trampoline, and bouncing on a therapy ball

three times per day in sequence (Tr. 146: 1-2). Those interventions helped P.M. to remain calm and engaged enough to learn. (Ex. Q; Tr. 146: 3-10).

Therefore, Rebecca provided P.M. with specialized instruction and sufficient support services obtained for a student to address all of his educational difficulties and thus allowed him to make meaningful progress across all educational domains.

### 3. The Equities Favor Plaintiffs

A school district must reimburse parents for their expenditures for private educational services obtained for a student when equitable considerations support the parents' claim. *Florence County Sch. Dist. Four v. Carter,* 510 U.S. 7 (1993); *Sch. Comm. Of Burlington v. Dep't. of Educ.*, 471 U.S. 359, 369-70 (1985). In the instant case, nothing in the record suggests that the Plaintiffs failed to cooperate with the CPSE.

**A. Plaintiffs attended all the CPSE meetings and kept in touch with the CPSE team.**

Plaintiffs allowed the Department to evaluate and observe P.M. (Tr. 171: 20-25; 172: 1-3). They shared information with the Department and participated as fully as they could have in all three IEP meetings for the 2021-2022 School Year. (Ex. F and Ex. V).

**B. Plaintiffs visited all preschools suggested by CPSE based upon the March 2021 IEP; no schools were suggested for the August 2021 IEP.**

Plaintiffs would have preferred to send their son to an appropriate public school but were not offered one. After the March 2021 IEP meeting, the Parents toured many CPSE schools to decide whether the placement and program were appropriate. (Tr. 243; 272; 287-296). Plaintiffs genuinely endeavored to keep an open mind about the State-approved options provided that the IEP to be implemented was appropriate for P.M. (Tr. 296).

It was unfair for the SRO to infer that Plaintiffs were being uncooperative when they declined to accept the ADAPT offer. ADAPT could not offer full-time in-person instruction and lacked a plan for a return to full-time in-person learning. (Tr. 291: 17-25; 2932: 1-7; 272: 2-12). Moreover, ADAPT did not offer Parent counseling and Training (Ex. 14). Parent Counseling and Training are required for children diagnosed with autism. 8 NYCRR 200.13(d) (Ex. 5-2). New York regulations require that school districts offer training and counseling to parents of a child with autism to help the parents implement the IEP. *Id*. Although, Parent Counseling and Training were recommended on the March 2021 IEP (IHO Decision at 7)(Ex. 14), ADAPT could not implement that IEP recommendation. All in all, ADAPT was an inappropriate placement for P.M., notwithstanding the inappropriate (and subsequently non-operative) March 2021 IEP.

Plaintiffs had the legal right to refuse an spring/April 2021 placement and continue the Early Intervention Program until P.M. aged out on August 31, 2021. According to Section 2541 of the Public Health Law, children in the Early Intervention Program who have been determined eligible for services under Section 4410 of the Education Law before their third birthday and who, like P.M., are born during the months of January through August can, at the option of their parents, remain in the Early Intervention Program until September 1 of that same year. Therefore, Plaintiffs had the right to continue with the Early Intervention Program until August 31, 2021.

### C. Plaintiffs visited all preschools suggested by CPSE based upon the March 2021 IEP; no schools were suggested for the August 2021 IEP.

Longstanding precedent within the Second Circuit permits parents to place refundable and non-refundable tuitions deposits to reserve their child's seat in a private school. *T.K.v. N.Y.C. Dep't of Educ.,* 810 F. 3d 869, 879 (2d Cir. 2016) ("Nor are we persuaded that Plaintiffs engaged in any form of misconduct merely by making a precautionary private school deposit prior to the

meeting with public school officials during which the IEP was developed. Summit required Plaintiffs to put down a deposit long before that meeting, and waiting would have imperiled their ability to secure a spot for L.K in the event that their concerns about bullying remained unaddressed.").

In the instant case, the Department had no appropriate program or placement to offer the Student for the 2021-2022 school year until October 21, 2021. And by July 30, 2021, less than 30 days remained before the Student was to age out of the Early Intervention Program pursuant to Section 2541 of the Public Health Law. By that time, the Department had not even completed the Assistive Technology evaluation (Ex. 12) that was first requested three months earlier at the March 31, 2021 Initial Eligibility Determination meeting. (Tr. 49: 15-21). Parents are permitted to pay a deposit for a private school placement to reserve the child's seat.

Plaintiffs could not afford to put down more than a $5,000 tuition deposit. (Tr. 262) Fifty percent of the deposit was refundable under the Rebecca School tuition agreement (Ex. J-5). The Rebecca School enrollment contract contained an opt-out clause that would have relieved Plaintiffs of their contractual obligation if they had accepted a final program offered by the Department by September 30, 2021. (Ex.J-2). The Department failed to raise any objections to the cost of the Student's program at the Rebecca School when it cross-examined Plaintiffs and the Rebecca School Program Director. (Tr. 271: 16-22; 323: 21-25).

Accordingly, the equities weigh in favor of full tuition funding for P.M. because Plaintiffs cooperated with the CPSE.

## III.  Conclusion

The record establishes that: (1) the Department's failed to provide P.M. a FAPE for the 2021-2022 school year, (2) the Rebecca School was appropriate, and (3) the equities weigh

heavily in Plaintiffs' favor. Thus, the Petitioners are entitled to reimbursement and prospective tuition funding of the balance.

WHEREFORE, Petitioners respectfully pray that this Court:

1) Assume jurisdiction over this action;

2) Conduct a full review of the administrative record pursuant to 20 U.S.C. §1415(i)(2);

3) Accept and hear additional evidence regarding Plaintiffs' claims for relief pursuant to 20 U.S.C. §1415(i)(2)(B)(ii);

4) Reverse SRO Decision dated July 1, 2022 insofar as it denies relief to Plaintiffs;

5) Declare that Defendant Department failed to offer P.M. a FAPE for the 2021-2022 school year; that the Plaintiffs' unilateral placement of P.M. at the Rebecca School was reasonably calculated to confer meaningful educational benefits upon P.M., and is reimbursable under 20 U.S.C. §14l2(a)(10)C)(iii) and Prong II of the IDEA's Burlington/ Carter test for tuition reimbursement (see Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter, 510 U.S. 7 (1993); Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359 (1985);

6) Order Defendant Department to reimburse Plaintiffs for the cost of tuition at the Rebecca School for the 2021-2022 school year and directly fund the remaining balance to the Rebecca School, with pre-and post-judgment interest;

7) Declare that Plaintiffs have exhausted their administrative remedies with respect to the 2021-2022 school year;

8) Declare Plaintiffs to be the "substantially prevailing party" pursuant to the IDEA for the 2021-2022 school year;

9) Grant leave to Plaintiffs' counsel to submit a fee application for the recovery of statutory attorney fees and other costs pursuant to the fee-shifting provisions of the IDEA; and

10) Grant Plaintiffs any other and further relief as the Court may deem just and proper.


Dated: June 30, 2023

Respectfully submitted,

PLAINTIFFS' ATTORNEY

s/
By:  OROMA HOMA MPI-REYNOLDS
Bar #OM9042

MSR Legal & Consulting Services, PLLC
503 Linden Street
West Hempstead, New York 11552
Oroma@MSRLegal.ORG
Direct: (516) 725-5514
Fax: (516) 604-0247