UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------- X

C.M., et al.,

                         Plaintiffs,             Index No.: 1:22-cv-9307 (JHR)(SN)


- against -                                       ECF Case


NEW YORK CITY DEPARTMENT
OF EDUCATION,

                         Defendant.
------------------------------------------X


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGEMENT**


                                  Respectfully Submitted,

                                  s/
                                  Oroma Mpi-Reynolds, Esq.
                                  MSR Legal & Consulting Services, PLLC
                                  503 Linden Street
                                  West Hempstead, New York 11552
                                  Oroma@MSRLegal.ORG
                                  (516) 725-5514

**Table of Contents**

I. FACTUAL BACKGROUND

II. ARGUMENT

      A. Burlington/Carter

      C. Deference

    1. The DOE Denied the Student a FAPE

      A. The Operative IEP failed to incorporate adequate testing and services.

      B. The August 2021 IEP

         1) The Failure of DOE to Conduct Adequate Evaluation Prior to IEP Development and Placement Violates IDEA and ADA.

         2) The August 2021 IEP Placement was Deficient.

      C. The Department Failed to Meet its Burden of Proof, and the SRO Erroneously Inferred that the August 2021 IEP is Appropriate

    2. Rebecca was Appropriate for The Student

      A. The Rebecca Program is Appropriate for Children with Autism

      B. The Program at Rebecca was Specifically Tailored to Enable the Student to make meaningful progress.

    3. The Equities Favor Petitioners

III. Conclusion

**Table of Authorities**

| Judicial Decisions | Page(s) |
|---|---|
| Individuals with Disabilities Education Act (IDEA): 20 U.S.C. § 1400 et seq. | 8-9, 14 |
| Americans with Disabilities Act (ADA): 42 U.S.C. § 12101 et seq. | 15 |
| Appeal under Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 et seq., | 6 |
| Appeal from State Review Officer ("SRO") Decision 22-059, issued on July 7, 2022. | 5 |
| Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186 | 8-9 |
| M.H. v. N.Y.C. Dep't of Educ., 685 F.3d 217 | 9 |
| Forest Grove Sch. Dist. v. T.A., 557 U.S. 230 | 9 |
| R.R. ex. Rel. M.R. v. Scarsdale Union Free Sch. Dist., 615 F. Supp. 2d 283 | 9 |
| Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105 | 8 |
| Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176 | 8 |
| T.Y. v. N.Y.C. Dep't of Educ., 584 F.3d 412 | 8 |
| Honig v. Doe, 484 U.S. 305 | 8, 14 |
|  |  |
| Reyes ex rel. Reyes v. Bd. of Educ. of the City of N.Y. (2014) | 12 |
|  |  |
| Florence County Sch. Dist. Four v. Carter, 510 U.S. 7 (1993) | 10 |
| Sch. Comm. Of Burlington v. Dep't. of Educ., 471 U.S. 359, 369-70 (1985) | 9-10, 16 |
| Mr. and Mrs. A. v. NYC Dep 't of Educ., 769 F. Supp. 2d 403, 418-419 (S.D.N.Y. 2011) | 18 |
|  |  |
| **Statute and Regulations** | **Page(s)** |
| 20 U.S.C. § 1412(a)(1)(A) | 8-10 |
| Section 200.16(a) of the Regulations of the Commissioner of Education | 9 |
| N.Y. Educ. L. § 4404(1) | 9, 17 |
| 34 C.F.R. A§300.17 | 9 |
| 20 U.S.C§1401(3)(A)(9) | 9 |
| 20 U.S.C §§ 1400-1482 | 9 |
| 20 U.S.C. § 1414(d)(1)(A) | 8 |

| 20 U.S.C. § 1400(d)(1)(A) | 8 |

## I. PROCEDURAL HISTORY

This action arises under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 et seq., and involves an appeal from State Review Officer ("SRO") Decision 22-059, issued on July 7, 2022. On two occasions, the Defendant provided the Plaintiffs with **proposed** IEPs– once in April 2021 and again in August 2021.  Both proposed IEPs failed to account for P.M.'s atypical behavior as identified in a later completed private evaluation (Certified Administrative Record "CAR", as received from the New York State Education Department, at 67).   In developing these two proposed IEPs, Defendant discarded accepted practices for educating nonverbal students diagnosed with or suspected of having autism. The Plaintiffs, the Parents of the P.M. ("the Student"), initiated the underlying administrative proceeding by seeking direct funding and reimbursement for their child's private school tuition for the 2021–2022 school year at the Rebecca School. The Parents alleged that the Defendant, New York City Department of Education ("DOE" or "Defendant"), failed to offer the Student with a free appropriate public education ("FAPE") as required under the IDEA.

Initially, the case was heard by an Impartial Hearing Officer ("IHO"), who ruled in favor of the DOE, determining that it had offered the Student a FAPE for the 2021-2022 academic year. The Parents then appealed this decision to the SRO. On July 7, 2022, the SRO upheld the IHO's decision, despite finding that the IHO reviewed and decided upon the inoperative IEP from April 2021, and despite there being no evidence in the hearing record regarding the appropriateness of the operative August 2021 IEP.  As a result, the Plaintiffs assert that the SRO exceeded her jurisdiction of reviewing the hearing record before her.  The SRO concluded that the Parents were not entitled to the relief they sought, specifically the funding of the Student's enrollment at the Rebecca School for the 2021-2022 school year. The SRO also noted that, given the finding that a FAPE had been offered, it was unnecessary to address

5

the issue of whether the Parents' unilateral placement of the Student at the Rebecca School was appropriate or whether any equitable considerations would preclude relief for the Parents.

Subsequent to the SRO's decision, the Plaintiffs timely appealed to this Court, seeking a modified de novo judicial review. In response, the Defendant has cross-moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Plaintiffs argue that the Court should disregard the SRO's analysis contained in Decision 22-059, which erroneously concluded that the DOE had offered a FAPE to the Student for the relevant academic year. Such conclusion was not supported by the hearing record, and is based on a lack of comprehensive educational evaluations which lead to two inappropriate proposed IEPs for the Student.

## I.    FACTUAL BACKGROUND

During the 2020–2021 school year, the student, P.M., took part in the New York City Early Intervention Program ("EIP") through which he received specialized services to promote his delayed development. (ECF No. 30 at 8-9). For the subsequent 2021–2022 school year, the Student was classified as a preschool student with a disability by the Department of Education's Committee on Preschool Special Education ("CPSE") (CAR at 9). In determining the Student's eligibility for CPSE services, the Department commissioned a very limited set of assessments conducted between January and February 2021. The initial evaluation consisted primarily of a psychological evaluation and behavioral observation, although other assessments were attempted via telehealth.

On March 31, 2021, a CPSE meeting was held to prepare the Student's IEP for the 2021–2022 school year. The CPSE meeting culminated in an agreement for Plaintiffs to

pursue additional evaluations, and a disagreement over the number of weekly speech therapy sessions.  No goals were created nor discussed at the March 31, 2021 meeting.

The Plaintiffs received the first proposed IEP on April 1, 2021– a day *after* the CPSE meeting (CAR at 142), and immediately engaged in the CPSE process by offering detailed feedback on the CPSE's proposed annual goals shortly thereafter.   The Plaintiffs pointed out specific inconsistencies between P.M.'s abilities, presenting levels of performance on evaluations, and the goals proposed by the DOE.  A follow-up meeting took place in mid-April 2021, yet no revised IEP was generated at that time.

Despite the Defendant's limited evaluations and the Plaintiffs' highlighting the clear need for additional testing and a different level of services, the Plaintiffs received a preschool acceptance letter from the ADAPT Community Network ("ADAPT"), based on the CPSE's dubious recommendations, particularly in the area of speech delivery and annual goals. Meanwhile, the Plaintiffs' believed that the proposed IEP stemming from the March 31, 2021 CPSE meeting was only a draft. After the Student moved to a different region within the district during the summer of 2021, on August 9, 2021, the Defendant held another CPSE meeting to review the Student's preschool program.  At that time, the Defendant scrapped its 12:1:2 special class proposal in its entirety and instead suggested a group SEIT (special education itinerant teacher) service along with increased speech therapy and revised goals. The Defendant offered no explanation to the Plaintiffs for its drastic change of programming, nor did any evaluative data exist to support the contention that P.M. could make progress in a general education classroom with group SEIT for two hours per school day.  Approximately two weeks later the Plaintiffs served a 10-Day Notice Letter on the Defendant, indicating

their intent to unilaterally place the Student in the Rebecca School in the absence of a finalized appropriate alternative from the Defendant.

Given the unresolved issues concerning the extent of the Student's special education needs and their lack of confidence in the CPSE's conflicting recommended programs, the Plaintiffs enrolled the Student in the Rebecca School effective September 13, 2021. On that date, they filed a due process complaint notice with the DOE, notifying it of the unilateral placement and the intent to seek reimbursement and direct tuition funding.

## II. ARGUMENT

The IDEA requires a state that receives federal education funding to provide all children with disabilities with a "free appropriate public education." *20 U.S.C. § 1412(a)(1)(A)*; see also *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 192 (2d Cir.2005). A FAPE should "emphasize special education and related services designed to meet [a disabled child's] unique needs and prepare [the child] for further education, employment, and independent living." *20 U.S.C. § 1400(d)(1)(A)*. To accomplish that purpose, the DOE must develop an IEP for each disabled child that "sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *Honig v. Doe*, 484 U.S. 305, 311, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988); see also 20 *U.S.C. § 1414(d)(1)(A)*; *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 415 (2d Cir.2009). The IEP must be "reasonably calculated to enable the child to receive educational benefits." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 207, (1982); see also *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 107 (2d Cir.2007) (citing *Walczak v. Fla. Union Free Sch. Dist.,* 142 F.3d 119, 122 (2d Cir.1998)).

Under Section 504, all school-age children who are individuals with disabilities as defined are entitled to FAPE. And, the Individuals with Disabilities Education Act ("IDEA"), *20 U.S.C §§ 1400-1482*, extends the right to a FAPE to all students between the age of 3 and 21. *20 U.S.C§1401(3)(A)(9)*, *34 C.F.R. A§300.17*. Also see *R.R. ex. Rel. M.R. v. Scarsdale Union Free Sch. Dist., 615 F. Supp. 2d 283, 287* (S.D.N.Y. 2009). Part B of *IDEA* requires participating states to ensure that a free appropriate public education (FAPE) is made available to eligible children with disabilities in mandatory age ranges residing in the state. Furthermore, in New York State, according to *Section 200.16 (a) of the Regulations of the Commissioner of Education*, a preschool student with a disability shall be eligible for special education services and programs.

When a parent believes that the state has failed to offer his or her child a FAPE, the parent may unilaterally place the child in a private school and seek reimbursement from the school district. *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 247, (2009); see also *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 246 (2d Cir.2012); *Cerra*, 427 F.3d at 192. The parent must then file a due process complaint that challenges the appropriateness of the IEP and attend a hearing before an IHO. *N.Y. Educ. L. § 4404(1)*.

### A. Burlington/Carter

The IDEA specifically contemplates that "when a public school fails to provide a FAPE and a child's parents place the child in an appropriate private school without the school district's consent, a court may require the district to reimburse the parents for the cost of the private education" *C.F. v. NYC Dep 't of Educ.*, 746 F.3d 68, 73 (2d Cir. 2014) (citing Frank G. v. Bd. of Educ., 459 F.3d 356, 363 (2d Cir. 2006)); see *20 U.S.C. § 1412(a)(10)(C))*. Under the Burlington-Carter test for tuition reimbursement, parents are entitled to reimbursement of private

school tuition if (1) the IEP was not reasonably calculated to enable the child to receive educational benefits, (2) the private schooling obtained by the parents is appropriate to the child's needs, and (3) equitable considerations do not preclude all or a portion of the parental claim. Forest Grove v. TA., 557 U.S. 230 (2009); *Florence Cty. Sch. Dist. Four v. Carter*, 510 U.S. 7 (1993); *Sch. Cte. of Burlington v. Dept of Educ.,* 471 U.S. 359 (1985); Frank G. supra, cert. denied, 552U.S. 985 (2007); 20 U.S.C. § 1412(a)(10)(C).

The Plaintiffs seek tuition funding in the form of reimbursement and direct payment for their child's private school tuition at the Rebecca School for the 2021-2022 academic year under the Individuals with Disabilities Education Act ("IDEA"). The Plaintiffs respectfully assert that this Court should apply the three-pronged Burlington-Carter test to establish that the Plaintiffs are entitled to tuition payment. Under this test, Plaintiffs must demonstrate: (1) The school district failed to offer an appropriate public education (FAPE); (2) The private school placement at the Rebecca School was appropriate for the child's needs; (3) There are no significant factors that would make reimbursement inequitable.

Neither of the Defendant's proposed IEPs for P.M. adequately addressed the Student's unique needs as identified in the independent speech evaluation. The Defendant's proposed IEPs specifically ignored P.M.'s atypical behavior and discarded accepted practices in educating nonverbal students diagnosed with or suspected of having autism. Although the CPSE undertook evaluations from January to February 2021, these evaluations did not sufficiently account for the Student's atypical behaviors or communication needs. Despite immediate parental feedback on the IEP and highlighting the Student's atypical behavior during the evaluations, no revised IEP was generated. This undermines the district's obligation to offer a FAPE as required by the IDEA. The Rebecca School specializes in teaching students with autism, offering smaller class

sizes, individualized attention, and comprehensive programs such as appropriate levels of individualized speech therapy, occupational therapy, and sensory and self-regulation. The Parents' decision to unilaterally place the student at the Rebecca School was a direct result of their lack of confidence in the CPSE's proposed recommendations, which were never finalized by the Defendant. The unilateral placement was a necessary step to ensure the student received an appropriate education tailored to his needs and to prevent a deprivation of educational benefits. The Parents provided timely notice to the DOE of their intent to unilaterally place the Student at the Rebecca School. They were engaged throughout the IEP process, offering feedback and seeking a cogent and responsive explanation for the Defendant's proposals. There is no evidence of an intent to avoid public schooling; rather, their actions were aimed at securing an appropriate education for their child in light of the DOE's shortcomings. The Parents provided timely notice to the DOE of their intent to unilaterally place the student at the Rebecca School.

## B.  Burden of proof

The burdens of production and persuasion at hearing fell upon the DOE for all matters except for the appropriateness of the Student's placement at the Rebecca School. *C.F. v. NYC Dept of Educ.*, 746 F.3d 68576 (2d Cir. 2014); MH v. NYC Dept of Educ., 685 F.3d 217, 224-25 (2d Cir. 2012); *N.Y. Educ. Law § 4404(l)(c).*

## C.  Deference

Ordinarily, courts view the SRO's conclusions and findings with deference. Deference does not, however, mean blind adherence to an administrative officer's perspective. The administrative decision must be supported by the record. If the SRO or IHO failed to properly analyze the record or if the SRO's or IHO's determinations are insufficiently reasoned, the court may substitute its own judgment for that of the SRO or IHO. MH 685 F.3d at 244; see also *C.L.*

*v. Scarsdale Union Free Sch. Dist.,* 744 F.3d 826, 838 (2d Cir. 2014), *A.D. v. City Sch. Dist. of NY*, 690 F. Supp. 2d 193, 207 (S.D.N.Y. 2010).

## 1.   The DOE Denied the Student a FAPE

With respect to the FAPE analysis, the issues identified in this appeal fall generally within two broader categories and will be addressed herein as: (1) whether the Parents were denied due process and meaningful participation in the development of the IEP; and (2) whether the IEP was substantively inappropriate. See, *Reyes ex rel. R.P. v NYC Dep 't of Educ., 760 F.3d 211, 219* (2d Cir 2014) (single substantive violation warrants a finding of denial of FAPE).

Substantive violations typically amount to denials of FAPE, thereby entitling parents and students to relief. Although a procedural violation does not necessarily mean the child failed to receive FAPE, it has been noted that "[m]ultiple procedural violations may cumulatively result in the denial of a FAPE even if the violations considered individually do not." *R.E. v. N.Y.C. Dept. of Educ.*, 694 F.3d, 167, 190 (2d. Cir. 2012), *see also A.D., 2013 U.S. Dist.* LEXIS 38757, at *17; *E.F.*, 2013 U.S. Dist. LEXIS 117143 at * 36. More specifically, a procedural violation will amount to a denial of FAPE if it: (1) impedes the child's right to a free appropriate public education; (2) significantly impedes the parents' opportunity to participate in the decision-making process regarding the provision of a free appropriate public education to the parent's child; or (3) caused a deprivation of educational benefit." *20 U.S.C. §300.513(a)*.

### A.     The Operative IEP failed to incorporate adequate testing and services.

The Special Education Itinerant Teacher (SEIT) services provided for under the August 2021 IEP, designated by the State Review Officer as the operative IEP (CAR at 18), allocated only 10 hours per week for the Student, within a group of two students.  The Defendant did not recommend SEIT as an individual service for the Student (CAR at 111). The truncated timeframe

of just two hours per school day of SEIT is unlikely to provide the Student with enough individualized instruction to make significant progress, thereby violating the mandate under the IDEA for a free appropriate public education.

The proposed IEP predominantly focuses on SEIT services designed to assist the Student in the classroom. However, the Student's needs likely extend beyond classroom assistance to include crucial developmental skills like communication. Children with autism commonly receive an array of services, including speech-language therapy, occupational therapy, and behavioral therapy. The IEP's failure to include these types of services at a reasonable frequency calls into question whether it is adequately tailored to the student's unique needs.

The intensity of services should be sufficient to yield a meaningful educational benefit, and the IEP's sparse allocation of resources falls short of this requirement. The IEP also seems to lack comprehensive diagnostic tools and assessments specifically tailored to the Student's disability, such as the Autism Diagnostic Observation Schedule (ADOS), Autism Diagnostic Interview-Revised (ADI-R), Early Screening of Atypical Development (ESDM), and Nonverbal IQ tests. The resulting proposed IEP failed to adequately address the Student's social communication, interaction abilities, risk factors, and cognitive abilities.

In addition, the SRO erroneously concluded that the August 2021 IEP was appropriate for a child suspected of autism, without adequately considering the deficiencies in time allocation, scope and intensity of services, geographic availability, and lack of comprehensive diagnostic tools.

In summary, the Defendant's proposed operative IEP fails to meet the Student's unique needs in multiple respects, thereby denying the Student a FAPE as required under IDEA. The

Plaintiffs were therefore justified in seeking alternative educational placements and supports, including the funding of tuition at the Rebecca School.

## B.    The August 2021 IEP

### 1)    *The Failure of DOE to Conduct Adequate Evaluation Prior to IEP Development and Placement Violates IDEA and ADA.*

Procedural errors will render an IEP inadequate where those errors: (1) impeded the child's right to a FAPE; (2) significantly impeded the parent's opportunity to participate in the decision-making process regarding the provision of a FAPE, or (3) caused a deprivation of educational benefits. *R.E.,* 694 F.3d 167, at 190. The Supreme Court has recognized that the right of parental participation is one of the IDEA's core procedural safeguards. *Honig,* 484 U.S. 305, at 311. Moreover, for purposes of harm to the parents, the courts often look into whether the parent was denied meaningful input and participation as part of developing the student's educational program. *Adam J. v. Keller ISD*, 328 F.3d 804, at 812 (5th Cir. 2003); see *Marcus I. v. Department of Education, State of Hawaii*, 63 IDELR 245 (9th Cir. 2014).

Under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400 et seq., the New York City Department of Education (DOE) is obligated to conduct a "full and individual initial evaluation" to determine whether a child has a disability and the nature and extent of the special education and related services the child needs. The failure to conduct a comprehensive evaluation addressing the atypical behaviors and nonverbal communication issues, as reported by the parent's private testing, is a glaring violation of IDEA. Simply offering an Individualized Education Plan (IEP) that includes speech services—without conducting an adequate evaluation—is not only procedurally deficient but also deprives the child of a FAPE.

IDEA mandates that an IEP must be tailored to the individual needs of the child and designed to meet the child's unique educational goals. By not incorporating a comprehensive evaluation that addresses atypical behaviors and nonverbal issues, the DOE has failed in its duty to offer an IEP that is specifically tailored to the child's needs, again in violation of IDEA. Given these violations, the parent is well within their rights to file a complaint not just with the DOE but also with the Office of Civil Rights (OCR), the federal agency that enforces IDEA. In addition to IDEA, the DOE's failure to evaluate the child adequately and tailor an appropriate IEP potentially violates the Americans with Disabilities Act (ADA). The ADA prohibits discrimination based on disability in all areas of public life. By failing to fully evaluate the child's unique needs, the DOE is in effect discriminating against the child, offering a lesser standard of education than what the child is federally guaranteed. Given these clear violations of both IDEA and potentially the ADA, the parent's unilateral decision to place the child in a setting that addresses their unique needs—like the Rebecca School—is not only justified but will also necessitate that the DOE reimburse the parent for any associated costs. Under IDEA, reimbursement for unilateral placement by parents is permissible when the public agency has not made a FAPE available to the child in a timely manner.

### 2)    *The August 2021 IEP Placement was Deficient.*

Under the IDEA, a FAPE must be tailored to the unique needs of the child. Given the specific challenges faced by a child suspected of, or diagnosed with, autism, who is also nonverbal, a small class size is crucial for the targeting of specific skills. Small class sizes allow for intensive, individualized attention that will target the child's unique needs, including their nonverbal communication challenges. This individualized approach is a cornerstone of FAPE as required by IDEA.

**C.      The Department Failed to Meet its Burden of Proof, and**

**the SRO Erroneously Inferred that the August 2021 IEP is Appropriate**

Under *Burlington/Carter* Test, the district has the burden of proving that it offered the student a FAPE.  If it fails, the burden shifts to the parent to prove that their program is appropriate and that the equities favor an award of tuition reimbursement/funding. "The Congressional statement and declaration clearly indicate that if parents with special needs children have the burden of persuasion at the administrative level, their failure to put on a prima facie case would mean that the school district could rest without having to produce any evidence in justification of the IEP." *Weast v. Schaffer*, 240 F. Supp. 2d 396 (D. Md. 2002).

New York has a long history of following this rule. In *Walczak v. Florida Union Free School District*, the Second Circuit held that the burden of proof at a due process hearing is borne by the school. *Walczak*, 142 F.3d 121, 122 (2d Cir. 1998) (citing New York SEA decisions). And the Oberti Rule also applies to the Burlington/Carter Test. *New York Education Law §4401* also clearly places the initial burden of proof and persuasion on the school district. *Oberti v. Board of Educ.,* 801 F. Supp. 1392 (D.N.J. 1992).

Moreover, even if the parents lost in the lower trials and the case is appealed to the U.S. District Court, the due weight is still on the government agency. In the *Rowley* case, the Supreme Court held that "Given that the district court must independently review the evidence adduced at the administrative proceedings and can receive new evidence, we see no reason to shift the ultimate burden of proof to the party who happened to have lost before the state agency, especially since the loss at the administrative level may have been due to incomplete or insufficient evidence or to an incorrect application of the Act." *Rowley*, 995 F. 2d at 1219. In 1993, the Third Circuit Court, in *Oberti v. Bd. of Educ,* clearly held that the school district has

16

the burden of proof at the due process administrative hearing level and the U. S. District Court level, even if the school district prevailed at the administrative hearing. *Oberti*, 995 F.2d 1204 (3d Cir. 1993). Also, after the *Walczak* case, the Second Circuit followed the *Oberti* Rule. It held that in a due process hearing, school authorities have the burden of supporting the proposed IEP. *Walczak*, 142 F.3d 119, at 122 (2d Cir, 1998).

The DOE, under the Individuals with Disabilities Education Act ("IDEA"), must prove that a child's IEP must be likely to produce progress, not regression, and must afford the student an opportunity greater than mere trivial advancement. *T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist.,* 554 F. 3d 247, 254 (2nd Cir. 2009). In *Endrew F. v. Douglas Co. School District,* 137 S. Ct. at 999 (2017), the United States Supreme Court interpreted the scope of the FAPE requirements under the IDEA and heightened the responsibility of school districts from merely providing de minimis educational benefit or trivial progress. To meet its substantive obligation under the IDEA, a school district must affirmatively prove that it offered an appropriately supportive program and placement reasonably calculated to enable the child to make progress in light of the child's individual circumstances. *Id.* School authorities must provide a "cogent and responsive explanation" for their decisions "that shows that IEP is reasonably calculated to enable the child to make progress appropriate in light of these circumstances." *Id*. at 1002.

In  the instant case, the administrative officers below erred in articulating the Department's burden under the Burlington analysis as to "whether the proposed IEP was inadequate."   The articulation of standard in this manner erroneously shifted the burden of proof and persuasion onto the Parents to demonstrate that the IEP was inadequate, whereas *New York Education Law §4401* squarely places the initial burden of proof and persuasion in the impartial hearings on school districts. The Department's burden of proof was unreasonably minimized in

the proceedings below, and the SRO failed to consider all the relevant evidence before reaching her conclusion.

## 2.   Rebecca was Appropriate for The Student

Parental placements are subject to fewer constraints than those applied to school districts. *Schreiber v. E. Ramapo Cent. Sch. Dist.*, 700 F.Supp. 529 (S.D.N.Y. 2010). For example, parents are not subject to the exact mainstreaming requirements as school districts.  In order to prevail on the Second Prong of the *Burlington/Carter* analysis, the parent only needs to show that the placement provides educational instruction specially designed to meet the unique needs of a student with a disability, supported by such services as are necessary to permit the student to benefit from the instruction. *Frank G. v. Bd. of Educ.*, 459 F.3d 356, 364 (2d Cir. 2006). In our case, both the SRO and the IHO failed to render determinations regarding the appropriateness of Rebecca or the equities.

### A.    The Rebecca Program is Appropriate for Children with Autism

The program Rebecca is a full-time therapeutic special education program that serves students with neuro-developmental disorders, primarily Autism, who have difficulty relating to and communicating with the individuals around them. Rebecca has been held by courts in this District to be an appropriate placement for students with Autism. See, e.g., *A.D., supra*, 690 F.Supp. 2d at 210-212; *Mr. and Mrs. A. v. NYC Dep 't of Educ.,* 769 F. Supp. 2d 403, 418-419 (S.D.N.Y. 2011). Rebecca is in a full-time therapeutic special education program. The curriculum is adapted to fit each child's needs and learning style.

Rebecca uses the DIR methodology. The DIR model is supported by research and is especially effective with children with Autism and neuro-developmental disorders that interfere with the development of communication, relatedness, social skills, and appropriate learning

skills. The DIR considers "what they're learning; they're able to understand and hold onto and then generalize across all areas." "Those are the components of how we look at each child and then understanding their D (developmental capacities), their I (individual differences), and their R (relationship), we then create an individualized plan to meet that child's individual needs." *Id.*

The age range of the student population at the Rebecca school is 3 through 21. It has 18 classrooms, two sensory gyms, a regulation middle school gym, a nurse's office, three music therapy rooms, and an art room, which is ideal for students demonstrating exceptional needs. Students are grouped into classes based upon similarity of age, abilities, needs, behaviors, social and academic strengths and weaknesses, and verbal skills. Students are functionally grouped to encourage the formation of social and emotional bonds within each class, an area in which children with autism are particularly challenged. The therapists at Rebecca all have Master's degrees and are certified and licensed in their respective fields. Additionally, Rebecca school has its academic curriculum in alignment with the Common Core standards.

### B. The Program at Rebecca was Specifically Tailored to Enable the Student to make meaningful progress.

Rebecca is individualized to address each of the Student's needs and to address all of his learning difficulties. The Rebecca School specializes in teaching students with autism, offering smaller class sizes, individualized attention, and comprehensive programs and therapies. The Rebecca School has cultivated an environment where staff and students are highly familiar with autism spectrum disorders and the unique challenges they present. Such an environment is not just supportive but also therapeutic.

### 3.  The Equities Favor Plaintiffs

A school district must reimburse parents for their expenditures for private educational services obtained for a student when equitable considerations support the parents' claim. *Florence County Sch. Dist. Four v. Carter,* 510 U.S. 7 (1993); *Sch. Comm. Of Burlington v. Dep't. of Educ.*, 471 U.S. 359, 369-70 (1985). In the instant case, nothing in the record suggests that the Parents failed to cooperate with the CPSE.

### III.Conclusion

The record establishes that: (1) the DOE's failed to provide the Student a FAPE for the 2021-2022 school year, (2) the Rebecca School was appropriate, and (3) the equities weigh heavily in the Parents' favor. Thus, the Petitioners are entitled to reimbursement.

WHEREFORE, Petitioners respectfully pray that this Court:

1) Assume jurisdiction over this action;

2) Conduct a full review of the administrative record pursuant to 20 U.S.C. §1415(i)(2);

3) Accept and hear additional evidence regarding Plaintiffs' claims for relief pursuant to 20 U.S.C. §1415(i)(2)(B)(ii);

4) Reverse SRO Decision insofar as it denies relief to Plaintiffs;

5) Declare that Defendant Department failed to offer P.M. a FAPE for the 2021-2022 school year; that the Plaintiffs' unilateral placement of P.M. at the Rebecca School was reasonably calculated to confer meaningful educational benefits upon P.M., and is reimbursable under 20 U.S.C. §14l2(a)(10)C)(iii) and Prong II of the IDEA's Burlington/ Carter test for tuition reimbursement (see Florence Cnty. Sch.

Dist. Four v. Carter ex rel. Carter, 510 U.S. 7 (1993); Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359 (1985);

6) Order Defendant Department to reimburse Plaintiffs for the cost of tuition at the Rebecca School for the 2021-2022 school year and directly fund the remaining balance to the Rebecca School, with pre-and post-judgment interest;

7) Declare that Plaintiffs have exhausted their administrative remedies with respect to the 2021-2022 school year;

8) Declare Plaintiffs to be the "substantially prevailing party" pursuant to the IDEA for the 2021-2022 school year;

9) Grant leave to Plaintiffs' counsel to submit a fee application for the recovery of statutory attorney fees and other costs pursuant to the fee-shifting provisions of the IDEA; and

10) Grant Plaintiffs any other and further relief as the Court may deem just and proper.

Dated: September 5, 2023

Respectfully,

s/
Oroma Mpi-Reynolds, Esq.
MSR Legal & Consulting Services, PLLC
503 Linden Street
West Hempstead, New York
Oroma@MSRLegal.ORG
(516) 725-5514