UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| C.M. and S.M., individually and on behalf of P.M., a minor child,<br><br>Plaintiffs,<br><br>v.<br><br>THE NEW YORK CITY DEPARTMENT OF EDUCATION,<br><br>Defendant. | 1:22-CV-09307-LTS-SN |

MEMORANDUM OPINION AND ORDER

Plaintiffs C.M. and S.M. ("Plaintiffs" or the "Parents") are the parents of P.M., a child with a disability, and bring this case individually and on behalf of P.M. under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C.A. § 1400 et seq. (Westlaw through P.L. 119-100). The Parents appeal an administrative determination denying tuition reimbursement for their unilateral placement of P.M. in a non-public school for the 2021-2022 school year. This Court has jurisdiction of this action under 28 U.S.C. section 1331 and 20 U.S.C. section 1415(i)(2)(A).

Plaintiffs unilaterally placed P.M. in a non-public school, the Rebecca School, for the 2021-2022 school year and sought reimbursement for his tuition from Defendant, the New York City Department of Education ("Defendant," the "District," or the "DOE"). Plaintiffs filed a due process complaint ("DPC"). Following an administrative hearing, the Impartial Hearing Officer ("IHO") found that the DOE had offered P.M. an appropriate placement and denied Plaintiffs' request for reimbursement. Plaintiffs appealed to the New York State Education Department, where a State Review Officer ("SRO") affirmed the IHO's decision. Plaintiffs subsequently commenced this action, seeking review and reversal of the SRO's decision.

The parties have each moved for summary judgment. (See docket entry no. 49 ("Plaintiffs' Motion"); docket entry no. 54 ("Defendant's Cross-Motion").) Plaintiffs seek reimbursement of the Rebecca School tuition and related costs for the 2021-2022 school year, while Defendant seeks dismissal of this case. The Court has reviewed thoroughly all the parties' submissions, including the Certified Administrative Record ("CAR").[1] For the reasons set forth below, Plaintiffs' Motion is denied, and Defendant's Cross-Motion is granted.

## I. Background

### A. The IDEA's Statutory Framework

The IDEA requires all states receiving federal funds "to provide 'all children with disabilities' a 'free appropriate public education.'" Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 107 (2d Cir. 2007) (quoting 20 U.S.C. § 1412(a)(1)(A)). Under the IDEA, the appropriate agency must develop an individualized education program ("IEP") for each child with a disability. 20 U.S.C. § 1414(d).

If parents disagree with an IEP developed by their school district, they may unilaterally place their child in a private school at their own risk and seek retroactive

[1] The parties submitted the Certified Administrative Record in this case as 30 separate filings with a consistent internal pagination that spans across all 30 documents. (See docket entry nos. 48-1 through 48-30.) For ease of reference, all citations in this Memorandum Order to the CAR and the exhibits contained therein will follow that internal pagination. Plaintiffs have moved to maintain the CAR under seal. (Docket entry no. 45.) Despite the presumption of public access to judicial documents, Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119-20 (2d Cir. 2006), courts in this District typically permit sealing of the certified administrative record in IDEA cases given the strong privacy interests at stake—namely, the need to maintain confidentiality of a minor's sensitive personal and health information, see, e.g., S.W. ex rel. A.W. v. N.Y.C. Dep't of Educ., No. 22-CV-3592-LGS, 2023 WL 5803415, at *10 (S.D.N.Y. Sept. 7, 2023). Here, the CAR is replete with such information and, because Plaintiffs' privacy interest outweighs the presumption of private access, the sealing motion is granted.

reimbursement of the private school's tuition from the local school district. Id. § 1412(a)(10)(C). Parents seeking tuition reimbursement must first lodge an administrative challenge with the state educational authority by filing a due process complaint contesting the adequacy of the school district's proposed IEP. Id. § 1415(b)(6)(A). They then have the right to an "impartial due process hearing" before an IHO. Id. § 1415(f)(1)(A); N.Y. Educ. L. § 4404(2). In New York, either party may appeal an IHO's decision to an SRO, who conducts an independent review of the IHO's factual findings and decision. 20 U.S.C. § 1415(g); N.Y. Educ. L. § 4404(2). Any party aggrieved by the SRO's decision may bring a civil action in federal district court. 20 U.S.C. § 1415(i)(2).

B. Factual Record

The following facts are drawn from the CAR, which was submitted to the Court in connection with the instant motion practice, as well as from undisputed portions of the parties' Local Rule 56.1 Statements of Undisputed Material Facts.

At the start of the 2021-2022 school year, P.M. was a three-year-old child who was classified as a preschool student with a disability by the DOE's Committee on Preschool Special Education ("CPSE"). (Docket entry no. 57 ("Pls. 56.1 St.") ¶¶ 2-3.)[2] He was initially evaluated at 18 months old due to a speech delay and began receiving early intervention services ("EIS") at that time through the Early Intervention Program ("EIP"). (CAR at 13 (at 11-38, "SRO Decision").)

The CPSE convened for the first time on March 31, 2021, to develop an IEP for the 2021-2022 school year (the "March IEP"). Plaintiffs received a copy of the March IEP on

---

[2] All citations to Plaintiffs' and Defendant's Local Rule 56.1 statements incorporate by reference the underlying evidentiary submissions cited therein.

April 14, 2021. (SRO Decision at 14; Pls. 56.1 St. ¶ 6.) The March IEP provided that P.M. would receive services at an "Approved Special Education Program," and the District identified three approved school options. (CAR at 978.) Shortly after receiving the March IEP, the parents opted for P.M. to continue receiving EIS through the end of August, deferring the CPSE's placement until then, and the parties agreed to reconvene in August of 2021 to finalize the IEP. (CAR at 70 (at 67-87, "IHO Decision"); docket entry no. 60 ("Def. Supp. 56.1 St.") ¶ 46.) Consequently, P.M. was scheduled to transition from the EIP to the DOE's CPSE placement at the start of the 2021-2022 school year. (Def. Supp. 56.1 St. ¶ 46.)

On July 30, 2021, the Parents made a non-refundable enrollment deposit and signed an enrollment contract for P.M. with the Rebecca School. (CAR at 1018, 1023.) In accordance with the parties' earlier agreement, the CPSE reconvened on August 19, 2021, to review the March IEP. (Pls. 56.1 St. ¶ 11.) On August 27, 2021, the Parents delivered a ten-day notice letter to the DOE stating their intention to unilaterally enroll P.M. at the Rebecca School for the 2021-2022 school year starting on September 13, 2021. (CAR at 888.) The CPSE convened again just three days later, on August 30, 2021, and developed a new IEP (the "August IEP"). (SRO Decision at 15-16.) The parents attended that CPSE meeting and received a copy of the August IEP, which indicated a projected implementation date of September 13, 2021. (Id. at 16.) The August IEP updated the location of services to an early childhood center selected by the parents. (Id.) Although the August IEP changed P.M.'s educational placement, Defendants did not issue a Prior Written Notice ("PWN") to the Parents before convening the August 30, 2021 CPSE meeting. (Pls. 56.1 St. ¶ 20.)

The student began attending the Rebecca School on September 13, 2021 (Id. ¶ 16), and, on that same day, the Parents filed a due process complaint seeking reimbursement of

all tuition and other costs related to the student's enrollment at the Rebecca School. (CAR at 762, 769 (at 762-771, "DPC").) The DPC did not mention the recently developed August IEP and instead contested only the March IEP. (IHO Decision at 75.) The DOE issued a Final Notice of Recommendation ("FNR") specifying the provisions of the August IEP on October 20, 2021. (CAR at 676.)

In early 2022, the parties attended several due process hearings presided over by IHO Vandana Chak, which culminated in a corrected written decision dated April 11, 2022. (See generally IHO Decision.) IHO Chak found that Plaintiffs' DPC contained only allegations pertaining to the March IEP, and she therefore treated the March IEP as the operative IEP for purposes of her analysis. (Id. at 76.) Because the IHO concluded that the March IEP was substantively adequate and that any procedural violations did not rise to the level of a deprivation of a free appropriate public education ("FAPE"), she denied Plaintiffs' claim for reimbursement. (Id. at 76-82, 86).

Plaintiffs timely appealed the IHO's decision to an SRO, who issued a decision dated July 2022. (See generally SRO Decision.) As a threshold matter, SRO Sarah Harrington found that the IHO erred in treating the March IEP as the operative IEP. (Id. at 25.) The SRO, treating the August IEP as the operative IEP, rejected Plaintiffs' arguments that various procedural defects resulted in a denial of a FAPE and upheld the IHO's decision denying Plaintiffs' claim for tuition reimbursement. Plaintiffs appealed the SRO's determination by bringing a civil action in this Court.

## II. Discussion

The purpose of the IDEA is "to ensure that all children with disabilities have available to them a FAPE that emphasizes special education . . . designed to meet their unique

needs . . . ." 20 U.S.C. § 1400(d)(1)(A). The school district must create an IEP for each child with a disability. Id. § 1414(d). That IEP must follow the procedural requirements of the IDEA and must be "reasonably calculated to enable the child to receive educational benefits." T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist., 752 F.3d 145, 151 (2d Cir. 2014).

As explained above, if parents believe an IEP does not provide their student with a FAPE, they may unilaterally enroll their child in private school and then seek reimbursement from the school district. Id. at 152. Whether the parents are entitled to reimbursement is determined by applying the three-part Burlington/Carter test. See Florence Cnty. Sch. Dist. Four v. Carter, 510 U.S. 7 (1993); Sch. Comm. Of the Town of Burlington v. Dep't of Educ., 471 U.S. 359 (1985). Under this test, Parents are entitled to reimbursement under the three-part test if "(1) the school district's proposed placement violated the IDEA, (2) the parents' alternative private placement was appropriate, and (3) equitable considerations favor reimbursement." T.M., 752 F.3d at 152.

With respect to this Court's standard of review, "[t]hough the parties in an IDEA action may call the procedure 'a motion for summary judgment,' the procedure is in substance an appeal from an administrative determination." M.H. v. N.Y.C. Dep't of Educ., 685 F.3d 217, 226 (2d Cir. 2012) (quotation omitted). As such, a district court must engage in an independent review of the administrative record and make a determination based on a "preponderance of the evidence." Gagliardo, 489 F.3d at 112 (quotation omitted). Federal courts reviewing administrative decisions must give "due weight" to these proceedings, particularly regarding "questions of educational policy." Id. at 113 (quotation omitted). Where an IHO and SRO disagree with one another, courts generally "defer to the final decision of the state authorities"—here, the SRO Decision. M.H., 685 F.3d at 241 (quotation omitted).

Before this Court, Plaintiffs argue that the SRO reached three erroneous conclusions that justify reversal: (1) her conclusion that the August IEP was operative; (2) her conclusion that Prong I of the Burlington/Carter test favored the District; and (3) her conclusion that there was no need to evaluate Prongs II and III of the Burlington/Carter test. The Court will address each of Plaintiffs' arguments in turn.

A. The Operative IEP

Plaintiffs first argue that the SRO "arbitrarily decided" that the August 2021 IEP was the operative IEP. (Docket entry no. 50 ("Pls. Mem.") at 10.) Under the IDEA, the SRO must "[e]xamine the entire hearing record," 34 C.F.R. § 300.514(b)(2)(i), conduct "an impartial review of the findings and decision appealed," 20 U.S.C. § 1415(g)(2), and "make an independent decision upon completion of such review," id.

Here, the SRO's conclusion that the August IEP was the operative one was based on two significant facts: first, that the August IEP was the later-developed IEP (SRO Decision at 24 (citing M.C. v. Mamaroneck Union Free Sch. Dist., No. 17-CV-1554-CM, 2018 WL 4997516, at *25 n.3 (S.D.N.Y. Sept. 28, 2018)); and second, that the August IEP was developed within the ten-day notice period preceding Plaintiffs' unilateral placement (id. at 25). In connection with this second point, the SRO cited Board of Education of Yorktown Central School District v. C.S., which explained that the IDEA's ten-day notice requirement "gives school districts an opportunity to discuss with parents their objections to the IEP and to offer changes to the IEP" prior to private school enrollment and the filing of a DPC. 990 F.3d 152, 171 (2d Cir. 2021).[3] The CPSE convened and developed the August IEP just three days after the

[3] The IDEA requires parents to provide the school district with written notice ten days in advance of unilaterally placing their child in a private school to avoid limitation on or denial of reimbursement. 20 U.S.C. § 1412(a)(10)(C)(iii).

Parents filed a ten-day notice letter, which was well within the District's ten-day window of opportunity before unilateral placement. The SRO's conclusion that the August IEP was operative was therefore consistent with Circuit precedent and was supported by a preponderance of the evidence.

Plaintiffs' arguments to the contrary are not persuasive. Plaintiffs claim that the August IEP was not final (Pls. Mem. at 10) but, somewhat perplexingly, Plaintiffs present extensive evidence and argumentation to demonstrate that the March IEP was not final. (E.g., id. at 11 (explaining that the CPSE "would reconvene in August 2021 to review additional data and finalize the IEP" and presenting District testimony that "the March 2021 IEP was never finalized").) What Plaintiffs do not provide, however, is any evidence that the August IEP was not final. If anything, Plaintiffs' cited evidence suggests that both the Parents and the District understood that the March IEP was not final and that an operative IEP would be developed in August 2021. That is exactly what occurred here. Plaintiffs' argument thus provides no basis to overturn the SRO's determination.

Plaintiffs' only other notable argument concerning identification of the operative IEP is that the District was "conflicted about which IEP draft to defend" throughout the impartial hearing proceedings. (Pls. Mem. at 12.) In Plaintiffs' view, "[i]f DOE counsel and two administrative review officers could not agree on which document constituted an operative IEP for P.M., the Parents should not be faulted for their own confusion, too." (Id.) Plaintiffs' emphasis on the District's "conflicted" positions is misplaced. The August 2021 IEP was undisputedly within the record the SRO was required to examine, and the Plaintiff has presented no statutory basis to suggest that the arguments the District did or did not make below should somehow constrain the SRO's ability to reach an independent conclusion of fact based upon that

record. 20 U.S.C. § 1415(g)(2); see also 34 C.F.R. § 300.514(b)(2). The Court has no reason to disturb the SRO's conclusion so long as it was supported by a preponderance of the evidence, and here, it was.

In sum, the SRO correctly determined that the August IEP is operative, and the Court affirms that aspect of the SRO Decision. The Court will next evaluate whether Plaintiffs are entitled to tuition reimbursement under the Burlington/Carter test.

B. Prong I of the Burlington/Carter Test

Under Prong I of the Burlington/Carter test, the Court must determine whether the school district's proposed IEP offered the student a FAPE. T.M., 752 F.3d at 152. To find that Prong I is satisfied, the Court must find either a substantive denial of a FAPE under the IDEA or a procedural violation of the IDEA that rises to the level of denial of a FAPE. See generally Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d 377 (2d Cir. 2003).

Here, the SRO found that she lacked any basis upon which to conclude that the placement proposed by the District in the operative August IEP would have deprived P.M. of a FAPE. The SRO found that the Plaintiffs had forfeited any substantive arguments regarding the adequacy of the August IEP and that they failed to identify any procedural violations that rose to a level of denial of a FAPE. After conducting an independent review of the record, the Court finds that the SRO's decision was supported by a preponderance of the evidence.

First, the SRO correctly determined that Plaintiffs failed to properly raise any substantive challenges to the adequacy of the August IEP. Under the IDEA, the DPC defines the scope of arguments that may be raised at a due process hearing, and parents cannot raise arguments that they failed to raise in the DPC at the due process hearing or thereafter. 20 U.S.C. § 1415(f)(3)(B). Here, Plaintiffs' DPC failed altogether to mention the operative August IEP.

Instead, the DPC asserted that Plaintiffs had not received a response to the ten-day notice letter as of September 13, 2021. (DPC at 765.) That assertion was factually incorrect because it ignored the August 30, 2021, CPSE meeting, which the Parents attended, and the resultant August IEP, of which the Parents received a copy. The DPC then proceeded to raise a series of arguments pertaining only to the March IEP, which Plaintiffs here concede was not a final IEP. (Pls. Mem. at 10-11.) By failing to raise substantive arguments regarding the adequacy of the August IEP in their DPC, Plaintiffs forfeited any such arguments. See T.M., 752 F.3d at 170 (explaining that failure to raise an argument in a DPC results in forfeiture pursuant to 20 U.S.C. § 1415(f)(3)(B)). The SRO's decision to this effect was supported by a preponderance of the evidence. (SRO Decision at 25.)[4]

Second, Plaintiffs raise three arguments regarding Defendant's alleged procedural violations of the IDEA: (1) that the DOE failed to issue a timely Final Notice of Recommendation; (2) that it delivered the August IEP too close to the start of the 2021-2022 school year; and (3) that it failed to issue prior written notice before changing P.M.'s educational placement. Plaintiffs argue that these procedural violations impeded their opportunity to participate in P.M.'s educational decision-making process, resulting in a deprivation of a FAPE. (Pls. Mem. at 12-13.)

To prevail on Prong I of the Burlington/Carter test under a procedural FAPE deprivation theory, Plaintiffs must show as a threshold matter that the DOE, in fact, committed a procedural error that violated the IDEA. But even if such an error is identified, "not every procedural error will render an IEP legally inadequate." M.H., 685 F.3d at 245. Rather, relief is

---

[4] Indeed, even if Plaintiffs had been able as a matter of procedure to raise such substantive arguments before this Court, they failed to do so.

warranted only if alleged procedural violations: "(I) impeded the child's right to a [FAPE]; (II) significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a [FAPE] to the parents' child; or (III) caused a deprivation of educational benefits." Id. (quoting 20 U.S.C. § 1415(f)(3)(E)(ii)).

Plaintiffs first argue that the DOE failed to issue a timely FNR, leaving them uncertain about P.M.'s true educational placement. (Pls. Mem. at 13.) An FNR is a form that is sent to parents by the DOE that identifies the final recommended placement for the student. The SRO held that the District's failure to issue a timely FNR did not violate the IDEA because an FNR is a form specific to the district and is not required under federal or state law or regulation. (SRO Decision at 38.) Plaintiffs cite case law demonstrating that the DOE has a "long history" of issuing FNRs, but they do not cite any law showing that FNRs are legally required for an IEP to be operative or procedurally adequate. (Pls. Mem. at 13.) Furthermore, the Parents undisputedly received a copy of the August IEP, which specified the student's educational placement, so the Parents have failed to establish as a factual matter that they harbored uncertainty about P.M.'s placement. Accordingly, the SRO did not err in finding that the DOE's failure to issue a timely FNR did not violate Plaintiffs' procedural rights under the IDEA.

Next, Plaintiffs argue that the DOE issued the August IEP too close to the start of the 2021-2022 school year. In Plaintiffs' view, this constituted the denial of a FAPE because "P.M.'s parents had no time to research the proposed August 30, 2021 IEP before P.M.'s school year began in early September 2021." (Id. at 13-14.) Plaintiffs fail to show, however, that the timing of the August IEP resulted in a procedural violation of the IDEA.

The IDEA requires that a valid IEP must be in effect at the beginning of the school year. 20 U.S.C. § 1414(d)(2)(A). Here, the operative IEP was in place on August 30,

2021, which was before the school year began on September 13, 2021. It bears mentioning, moreover, that Plaintiffs were aware of and agreed to the August timeline and that they bear some responsibility for the proximity of the August IEP's creation to the start of the 2021-2022 school year. Plaintiffs acknowledge in their Memorandum of Law that, during the April CPSE meeting, all parties agreed that P.M. would continue receiving EIS through the end of August, and that the parties thus would reconvene in August to finalize the IEP. (Pls. Mem. at 11.) And indeed, Plaintiffs themselves triggered the timing of the development of the August IEP by issuing a ten-day notice letter on August 27, 2021. The timing of the August IEP neither violated the IDEA nor denied the child a FAPE under these circumstances.

Finally, Plaintiffs argue that the DOE's failure to issue a PWN was a procedural violation of the IDEA that impeded their opportunity to participate in P.M.'s educational decision-making process, resulting in a deprivation of a FAPE. As the SRO acknowledged, the IDEA explicitly requires that a PWN be issued to parents "whenever the local educational agency proposes to initiate or change; or refuses to initiate or change, the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to the child." 20 U.S.C. § 1415(b)(3). Here, the DOE did not issue a PWN to the Parents before changing the student's proposed educational placement through the issuance of the August IEP. Because the IDEA explicitly requires that the District send a PWN to the parents before changing the child's proposed educational placement, the SRO found that the DOE violated a procedural requirement

of the IDEA.[5] The SRO found, however, that this procedural violation did not rise to the level of a FAPE deprivation. This Court concurs.

As relevant here, a procedural violation of the IDEA may rise to the level of the denial of a FAPE if it, inter alia, "significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a FAPE." M.H., 685 F.3d at 245 (quoting 20 U.S.C. § 1415(f)(3)(E)(ii)). Here, the Parents argue that the DOE's failure to issue PWN significantly impeded their opportunity to participate in the decision-making process, although they do not articulate how. Courts facing facts analogous to those presented here have generally found that failures to issue a PWN did not rise to the level of substantive FAPE denial.

In Ambrister v. Banks, for example, the Second Circuit reasoned that the school district's failure to issue a PWN did not impede the parent's participation because the parent had actual knowledge of the changed placement, and the parent did not demonstrate that she would have acted differently had the DOE issued a timely PWN. No. 24-2852-CV, 2025 WL 2775936, at *2 (2d Cir. Sept. 30, 2025). Similarly, in R.B. v. New York City Department of Education, the court held that the failure to issue PWN did not impede the rights of the student or the parents because the parents were active participants in the CSE meeting and had the opportunity to provide their comments and concerns regarding their child's education. No. 15-CV-6331-DLC, 2016 WL 2939167, at *9 (S.D.N.Y. May 19, 2016), aff'd, 689 F. App'x 48 (2d Cir. 2017). In both cases, the parents had actual knowledge of the IEP's content and participated in its creation, so the failure to issue PWN did not rise to the level of substantive FAPE deprivation.

5 The parties have not cited any authority, nor is the Court aware of any, that speaks to whether PWN is required during the ten-day notice period. The Court need not decide this question because, even if there was a procedural violation here, it did not rise to the level of FAPE deprivation, as explained below.

Here, like the parents in Ambrister, Plaintiffs had actual knowledge of P.M.'s changing educational placement because they received the August IEP promptly, and they fail to identify anything they would have done anything differently had they timely received a PWN. Indeed, they enrolled P.M. in the Rebecca School on July 30, 2021, well before the IEP changed on August 30, 2021 (CAR at 1018, 1020-25), which suggests that they intended to enroll P.M. in private school regardless of the issuance of a PWN. And, like the parents in R.B., Plaintiffs participated in P.M.'s educational decision-making process by attending and participating in the August CPSE meetings. Consequently, the SRO did not err in concluding that the DOE's failure to issue PWN did not constitute a denial of a FAPE. The DOE's procedural violation does not entitle the Parents to relief on Prong I of the Burlington/Carter test.

In sum, the Court finds that Plaintiffs failed to make any substantive arguments about the adequacy of the August IEP, that the alleged procedural violations of failure to deliver a timely FNR and IEP are not procedural violations of the IDEA, and that the procedural violation of failure to issue PWN did not rise to a level of denial of FAPE. The SRO's well-reasoned decision contains no error on any of these points and is, consequently, affirmed. Plaintiffs have failed to show that the DOE's proposed placement violated the IDEA, so Prong I of the Burlington/Carter test does not favor reimbursement.

C. Prongs II and III of the Burlington/Carter Test

Finally, Plaintiffs argue that the SRO erred by not addressing Prongs II and III of the Burlington/Carter test. "If the challenged IEP was adequate, the state has satisfied its obligations under the IDEA and the necessary inquiry is at an end." M.C. ex rel. Mrs. C. v. Voluntown Bd. of Educ., 226 F.3d 60, 66 (2d Cir. 2000). "Only if a court determines that a challenged IEP was inadequate should it proceed to the second question." Id. Because the Court

affirms the SRO's determination that Plaintiffs did not demonstrate that the August IEP denied P.M. a FAPE, it concludes that the SRO did not need to decide Prongs II and III.

## III. Conclusion

For the foregoing reasons, the Court concludes that Plaintiffs are not entitled to tuition reimbursement under the Burlington/Carter test. The Court affirms the SRO's conclusion that there was no basis upon which to find that Defendant's proposed placement denied P.M. a FAPE. Accordingly, Plaintiffs' Motion for summary judgment is denied, and Defendant's Cross-Motion for summary judgment is granted. This Memorandum Opinion and Order resolves docket entry nos. 45, 49, and 54. The Clerk of Court is respectfully directed to enter judgment for Defendant and close this case.

SO ORDERED.

Dated: New York, New York
August 4, 2026

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge